# THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL. *vs.* WM. H. GAHAN.

*Municipal Corporations—Delegation of Legislative Power—Ordinance Giving to a Board Power to Select one of Three Kinds of Materials to be Used in Paving a Street.*

The exercise of powers devolved by law or charter on the council or governing body of a municipality cannot be delegated by the council to others.

When a municipality is authorized by its charter to provide by ordinance for the paving of streets, it may lawfully provide by ordinance for the paving of streets with any one of three designated materials to be selected, after competition between them, by certain officials, and such ordinance is not a delegation of the granted legislative power.

An ordinance of Baltimore City directed that nine designated streets should be paved with sheet asphalt or asphalt blocks or bitulithic pavement, as might be determined by five named officials after bids had been submitted.    It was also provided that specifications for the different kinds of paving should be prepared and advertisement made and that if the bids for doing the work should be excessive in the judgment of the Board of Awards, and the same be rejected, then the City Engineer should do the paving with vitrified brick in the case of these streets, and that in the case of certain other streets directed by the same

ordinance to be paved with wood blocks, if the bids are rejected because excessive the City Engineer should pave those streets with wood blocks by day labor. After the receipt of the bids, the Board of Awards selected asphalt blocks as the material with which one of the nine streets should be paved and awarded the contract to a company whose bid was lower than the other bid on the same material but higher than the bids on sheet asphalt. Section 9 of the City Charter (Act of 1898, ch. 123), empowers the Mayor and City Council to provide by ordinance for the grading, paving, etc., of any street in the city, and to provide by general ordinance for the paving of streets under conditions not here involved. Upon a bill by a taxpayer to restrain the execution of the contract so awarded, *held*, that assuming that the power to determine what material shall be used in paving a street is a legislative power, yet the ordinance giving to the Board of Awards the right to select one of three prescribed kinds of pavement is not invalid as being the delegation of a legislative authority which can only be exercised by an ordinance, since the ordinance in question limits the power of the Board of Awards to the selection of one of three kinds of named materials and is not an unrestricted delegation of the legislative power conferred by the charter on the council.

*Held*, further, that the provision in the ordinance that if all the bids on the alternative materials be rejected then the City Engineer shall pave the streets with vitrified bricks is not in conflict with sections 14 and 15 of the charter which direct that contracts for work and materials shall be awarded to the lowest bidder after advertisement, since, if any of the designated streets are to be paved with vitrified bricks, the City Engineer must prepare specifications and advertise for bids, and he is not empowered to lay the bricks by day labor.

*Decided per curiam August 9th, 1906; the following opinion was rendered October 4th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*W. Cabell Bruce* and *Albert C. Ritchie*, for the appellants.

*Richard B. Tippett*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

On June 15th, 1906, Ordinance No. 150 adopted by the Mayor and City Council of Baltimore was approved. It is

known as the Bruce-Fendall ordinance.    By its first section it provided for the paving of nineteen designated streets of the city, no one of which is situated in the annex.    Seven were directed to be paved with prepared wood blocks, two, with asphalt blocks, one with Belgian blocks and nine with sheet asphalt, asphalt blocks or bitulithic, as under *sec. 3*, might be determined by the Mayor, the President of the Second Branch of the City Council, the Comptroller, the City Register, and the City Solicitor, after the bids had been submitted and opened. All of this paving was required to be done in accordance with specifications to be prepared by the City Engineer, who was directed to advertise for proposals for performing the work on each of the named streets or parts of streets.    By the fourth section it was ordained that if the bids for doing the work on any of the nine streets for which the paving material is prescribed by the first section in the alternative, shall in the judgment of the Board of Awards, be excessive, and if the board shall reject all the alternative bids, the City Engineer should do the paving with vitrified bricks; and if the bids for doing the work on the streets required to be paved with treated wood blocks, shall, in the judgment of the board, be excessive and shall be rejected by the board, then the City Engineer should pave those streets with treated wood blocks by day labor.    By section five the whole cost of paving the nineteen streets was limited to $214,500.    Pursuant to this ordinance the City Engineer prepared and issued specifications for the laying of asphalt block, sheet asphalt and bitulithic pavements on Woodbrook avenue and on each of the other nine streets required to be paved with one of the three materials thus named in the alternative; each set of those specifications was complete and definite in itself, and each furnished the bidders on the respective materials to be used, with a common basis or standard upon which to submit their bids as to each of said kinds of pavements.    The specifications are entirely different from each other and call respectively for pavements which are wholly dissimilar except in so far as they are all composition pavements.    On the same day on which the ordi-

nance was approved the City Engineer duly advertised that sealed proposals would be received until eleven A. M. of June 27th, to grade, curb and pave with sheet asphalt, asphalt blocks or bitulithic the nine streets required by the first section of Ordinance 150 to be paved with such one of the three designated materials as the board named in the third section, might select. Woodbrook avenue is one of those nine streets, and when the bids referring to it were opened it was found that there were two bids on asphalt blocks, four on sheet asphalt, and two on bitulithic. The lowest bid on the first named article was two dollars and ten cents, on the second it was one dollar and eighty-four cents, and on the third it was two dollars and fifteen cents per square yard. The board then selected asphalt blocks as the material with which to pave Woodbrook avenue and awarded the contract to the Maryland Pavement Company, its bid being lower than the only other bid on the same material, but being higher than any of the bids on sheet asphalt. Two days later William H. Gahan, a taxpayer in the city filed a bill in equity in the Circuit Court of Baltimore City against the city and the successful bidder assailing Ordinance No. 150 as null and void and the proceedings taken thereunder as unlawful because, first, the ordinance attempts to delegate to the Mayor, the President of the Second Branch of the City Council, the City Solicitor, the City Comptroller and the City Register, or a majority of them, the power to select which one of the alternative kinds of materials specified in the ordinance should be used in the paving of the nine streets named therein, which power, it is averred, can only be exercised lawfully by the Mayor and City Council acting in its legislative capacity by an ordinance duly passed and approved specifically prescribing the material with which the streets shall be paved. Secondly, because by the process of bidding on alternative materials *secs. 14 and 15* of the charter were violated. And thirdly, because the fourth section of the ordinance requires the City Engineer, if all the alternative bids are rejected, to pave the streets with vitrified bricks by day labor; which provision is also alleged to be con-

trary to the same sections of the charter. An injunction to restrain the execution of the contract and to prohibit the doing of the work was prayed for. The city and the Maryland Pavement Company both demurred to the bill of complaint. The demurrers were overruled, and the defendants declining to answer, an injunction issued in accordance with the prayer of the bill. From that order this appeal was taken and the case was argued on August the eighth during a special session of this Court convened to hear this and the two preceding paving cases. On the ninth of August a decree was signed reversing the decretal order appealed against, and we now proceed to give our reasons in support of that action.

As the second of the three grounds upon which the Bruce-Fendall ordinance is attacked is precisely the same proposition that we have just fully and at length considered in the case of *Mayor, &c., Balto.* v. *Flack et al.*, we need say nothing further in regard to it than that for the reasons given in that case, it cannot be sustained in this; and we pass at once to the other grounds above indicated; and both of them, it seems to us, are founded upon a misconception of the meaning and effect of the ordinance.

Does the Bruce-Fendall ordinance delegate to the Board of Awards legislative authority which can only be lawfully exercised directly by the Mayor and City Council itself by ordinance? The *Act of 1904*, ch. 274, which was construed in the preceding cases has nothing to do with the question, since that Act relates solely to streets in the annex portion of the city and to the two million dollars loan with the avails of which those streets were to be paved; whilst the nine streets including Woodbrook avenue, designated in the first section of the ordinance now before us as those in respect to which alternative bids are to be and were asked for, are not within the annex, and the paving of them is to be paid for out of the two hundred and fourteen thousand and five hundred dollars included in the levy of 1906 made for that special purpose. Hence the charter of the city, and not the Act of 1904, must be looked to for the data needed to furnish an answer to the

question.   By sec. 6 of the City Charter, sub-division entitled
"*Streets, Bridges and Highways,*" the Mayor and City Coun-
cil are empowered "to provide by ordinance for grading,
shelling, graveling, paving and curbing   *   *   *   of any
lane, street or alley in said city.  *   *   *   To provide by
general ordinance   *   *   *   for the grading, graveling,
shelling, paving or curbing   *   *   *   of any street, lane or
alley   *   *   *   without the passage of a special ordinance
in the particular case, whenever the owners of a majority of
front feet of property binding on such street, lane or alley
*   *   *   shall apply for the same, upon terms and under
conditions to be prescribed in the same general ordinance,
&c."   The principle is a plain one, that the public powers or
trusts devolved by law or charter upon the council or govern-
ing body, to be exercised by it when and in such manner as
it shall judge best, cannot be delegated to others.   Thus
where by charter or statute local improvements, to be assessed
upon the adjacent property owners, are to be constructed in
"such *manner* as the *common council* shall prescribe" by ordi-
nance, it is not competent for the council to pass an ordinance
delegating or leaving to any officer or committee of the cor-
poration the power to determine the mode, manner, or plan
of the improvement.   1 *Dillon Mun. Corp.* (2 ed.), sec. 60.
So, in *Ruggles* v. *Collier,* 43 Mo. 359, where the charter gave
the city power to require streets to be paved "in all cases
where the City Council shall deem it necessary," it was held
that the council could not, by ordinance, make the Mayor the
judge of the necessity for paving.   To the like effect is *Hydes*
v. *Joyes,* 4 Bush. (Ky.) 464; *Birdsall* v. *Clark,* 73 N. Y. 73;
*Thompson* v. *Schermerhorn,* 6 N. Y. 92.   In *Mayor, &c.,* v.
*Scharf, &c.,* 54 Md. 499, an ordinance relating to paving was
held void on two grounds—one of which was that it delegated
to the City Commissioner authority to prescribe the rule ac-
cording to which the *pro rata* proportion of the total cost of
repaving a part of Baltimore street was to be assessed upon
each abutting proprietor; and the other of which was that no
notice was provided to be given to and no opportunity for a

hearing accorded the parties to be affected.    Upon a rehearing (*56 Md. 50*) the decree striking down the ordinance on those two grounds was rescinded upon the reasoning in *Mayor, &c.,* v. *Hopkins,* 56 Md. 1, and the duty assigned to the City Commissioner was held to be one involving only measurements and arithmetical calculations.    This last-cited case was overruled in *Ulman* v. *Mayor, &c.,* 72 Md. 587, but only in so far as concerned the ruling that the property owner was not entitled to notice of the proceedings affecting him and also not entitled to an opportunity to be heard, the ordinance having failed to provide for either notice or a hearing.

How, conceding, as falling within the principle laid down in these cases, and as intimated in *Mayor* v. *Stewart,* 92 Md. 551, that the power to determine what material is to be used in paving a street, is a legislative power, and that it is included under the power to grade and pave, and is to be exercised by the City Council, unless validly reposed in some other agency; then that power cannot be trausferred by the City Council to any one else.  The Bruce-Fendall ordinance however delegated to the Board of Awards no such broad and unrestricted power as was attempted to be conferred upon subordinate agencies by the ordinances reviewed in some of the above-cited cases. On the contrary, it limits the materials to be adopted and definitely prescribes that such one of the three thus selected by the City Council shall be used for the paving of each of the nine streets as the Board of Awards may designate after the bids have been opened—and when that designation has been made the two alternative methods which have not been chosen are eliminated from the ordinance and the accepted one stands written therein, pursuant to the declared will of the council, as fully and effectively and as precisely as if no other had been conditionally inserted therein.    That one, so selected after having been so specified in the ordinance, and after the other two have been excluded in the manner prescribed by the ordinance becomes, by force of the terms of the ordinance and in consequence of having been designated therein, the choice of the City Council; and

since each of the named pavements is merely an alternative of the others, each was adopted as suitable, and adopted by the City Council by the passage of the ordinance. This is the first ordinance of which we are aware in Maryland that has avowedly attempted to secure bids on alternative materials; and there is, consequently, no binding adjudication by this Court directly on the subject. All three of the designated pavements, as we are informed by the testimony contained in the record of the other two cases, are known as "composition" pavements, though the component parts of them are different and the general mode of construction is not identical. There is nothing in the charter provision giving the power "to provide by ordinance" for the paving of streets, which, either in direct terms or by fair implication, prohibits the City Council from putting these three composition pavements in competition with each other as alternative methods of paving. In *Mayor, &c.*, v. *Stewart, supra*, it was insisted that the ordinance there assailed and which directed that a part of Saint Paul street should be paved, gave to the City Engineer a discretion to use, in doing the paving, either sheet asphalt or vitrified bricks; but this Court held otherwise and after deciding that the ordinance did no such thing, said: "There is no delegation to the City Engineer of a power or discretion to decide 'whether the street shall be paved with sheet asphalt or with vitrified brick.' Undoubtedly the *broad* and *unrestricted* delegation of such a power would be unlawful." This observation was wholly unnecessary to the decision of the case. Having decided flatly that no such power *had been given* to the City Engineer by the ordinance, it was entirely apart from the case and purely an *obiter dictum* to add that the thing which *had not* been done was a thing which *could not* lawfully be done. The facts were not present for the application of, or to support that conclusion. But even the *obiter dictum* was qualified, for it referred, not to every or any delegation of power, but to, "the *broad* and *unrestricted* delegation of such a power;" and in the ordinance here involved there is no delegation of a broad and unrestricted power to the Board of

Awards.   But the ordinance reviewed in 92 Md. was upheld although it was more open, in another particular, to the criticism of delegating a discretionary power, than can be predicated of the Bruce-Fendall ordinance.   Ordinance No. 50 of 1900, which was the one involved in *Mayor, &c.,* v. *Stewart,* provided "that the City Engineer   *   *   *   have all of that part of St. Paul street   *   *   *   graded and paved with *Trinidad Lake*, *Alcatraz* or *Bermudaz* sheet asphalt, *or other* sheet asphalt which, *in the opinion* of the City Engineer, *is equally as good, &c.*"   Here were three different kinds of asphalt specified, and in addition the City Engineer was given the power and discretion to select any *other* asphalt which might, in *his* opinion, be equally as good as those named. This was a wide discretion given to him by the City Council as to the particular asphalt that he might use, since it is a matter of common knowledge that a large number of asphalts are claimed to be suitable for paving purposes; and yet the ordinance was sustained and the judgment of the lower Court in annulling it on another ground, was reversed, though that judgment could not have been reversed if this Court had thought the ordinance was void by reason of its improper delegation of a legislative power to the City Engineer.

But if it be objected that Ordinance No. 50 of 1900 fixed in definite terms the material to be used on Saint Paul street and only left to the discretion of the City Engineer the power to select one from three named and a large number of unnamed *kinds* of that same material, and, therefore, did not delegate an authority to choose the material to be used, whilst the Bruce-Fendall ordinance did *not* select *any material* but left that to the Board of Awards; it may be answered that if the selection of the *kind* of a designated material, when there are divers and dissimilar kinds from which to select, is not in the circumstances stated, the exercise of a power which cannot be delegated, then neither can the power to choose one thing out of three which have all been specified alternatively, be an unlawful delegation of a legislative authority, when each of the three things has been decided by the City Council to

be suitable. And it may be further answered that the assumption that the Bruce-Fendall ordinance does *not* select the material to be *used*, is not well founded, since the ordinance adopts *three*, and no other than one of the three can be employed, and the one which is chosen is in fact one which has been antecedently named by the City Council. Of course such a procedure is very far from being tantamount to the adoption of an ordinance which embodies a broad and unrestricted delegation to a subordinate body of a power to select, according to its own judgment, any material it may choose for a pavement. We distinguish between the delegation of a broad power to select any material, and an authorization to choose from alternative and designated materials, when that authorization is confined within reasonable limits. "What the Legislature distinctly says may be done cannot be set aside by the Courts because they may deem it unreasonable. But where the power to legislate on a given subject is conferred, but the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." *1 Dillon Mun. Cor.* (2d ed.) sec. 263. In view of the benefits which it is supposed the city will secure by inaugurating competition between different paving materials, we are not prepared to say that the mode adopted in this ordinance to effect that end, is an unreasonable exercise of the power "to provide by ordinance for * * * paving * * * any street, lane, or alley in" the city.

It has been argued, however, that if the ordinance is valid when naming *three* alternative pavements, it would be equally valid if, in the same way, it named a very much larger number; and, by pushing the principle one step further, the ordinance would be likewise valid although it named no materials, but left the selection of them wholly to the discretion of the Board of Awards, without restriction of any sort. This argument is fallacious. It is obvious, at a glance, that the last hypothesis presents a complete departure from the actual situation, and unequivocally involves a total surrender by the

City Council of *all* its powers and *all* its discretion in the premises, and would on that account be void. Nor would the other hypothesis be free from objection, since it would doubtless be an unreasonable exercise of the power to provide by ordinance for paving the streets. The naming of three alternative pavements is a reasonable basis for competition, and when done in the manner prescribed in the Bruce-Fendall ordinance and when done in good faith, is not open to the objection of being an unlawful delegation of legislative power.

This method of prescribing that the selection of one of three specified alternative pavements shall depend on the occurrence of a reasonable contingency, is not unlike, though not identical with, legislation which is declared to be effective only upon the happening of a future uncertain event. Thus in *Mayor, &c.*, v. *Clunet et al.*, 23 Md. 449, an ordinance to open a street in continuation of Holliday street was assailed as invalid because it contained in its fifth section a proviso that the ordinance should not take effect until certain *mandamus* cases pending in the Court of Appeals and removed there by writ of error to the Superior Court shall have been dismissed, and until certain named individuals shall "have given their written assent to the provisions of the fourth section;" but this Court held that section five did not delegate to others the discretion vested by law in the Mayor and City Council, and that a valid ordinance may be passed to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties.

The only remaining question arises under the fourth section of the Bruce-Fendall ordinance. That section is as follows:

Section 4. And be it further ordained that if the bids for doing the work on any of those streets for which the paving material has been prescribed in the alternative by the first section of this ordinance shall, in the judgment of the Board of Awards, be excessive, and the said board shall reject all the bids in reference to any one or more of those streets, then the City Engineer is hereby authorized and directed to pave said street or streets with vitrified brick; and if the bids for

doing the work on any of those streets which are required to be paved with treated wood block by the ·first section of this ordinance shall, in the judgment of the Board of Awards, be excessive, and said board shall reject all the bids with reference to any one or more of those streets, then the City Engineer is hereby authorized and directed to pave said street or streets with treated wood block by day labor.

The objection to this section is that if all the bids on alternative materials are rejected, the City Engineer is required to pave the streets with vitrified brick, *by day labor*, contrary to *secs. 14 and 15* of the charter. But the section does not require the streets alluded to, to be paved by day labor—the day labor has relation only to the streets which are directed to be paved with treated wood block. If the above nine indicated streets are to be paved with vitrified brick then the City Engineer must proceed to prepare specifications and advertise for bids, and he is not empowered to lay the vitrified brick by day labor. Whether the latter part of the· section which requires treated wood· block to be laid by day labor is valid or not, we do not decide as that question is not before us and is not involved in these proceedings.

Jones, J., dissents as to the effect to be given to secs.· 14 and 15 of the City Charter.