STOCKING and others, Respondents, vs. WARREN BROTHERS
COMPANY, imp., Appellant.

December 16, 1907—January 8, 1908.

Municipal corporations: Public improvements: Competition in bid-
ding: Charter provisions.

1. A city charter (ch. 124, Laws of 1891) provided that before pro-
posals for public improvements (paving streets) are adver-
tised, a profile or plan of the "work to be done," together with
the specifications, should be placed on file in the office of the
board of public works for the inspection of bidders, and a form
of contract as the same would be required to be executed by
bidders should be prepared and furnished to prospective bid-
ders; that when any work "shall have been ordered to be done"
and the plans for the same containing "a description of the
work, the material to be used, and such other matter as will
give an intelligent idea of the work required, shall have been
filed in the office of the board of public works, where the same
can be inspected by persons desiring to bid on such work," bids
may be advertised. Held:
    (1) The charter not only contemplated, but definitely re-
quired, that, in advance of the advertisement for bids, a definite
work, done in a definite way, with definite materials, must first
be determined upon by the council; that the plans and specifi-
cations for this work must be filed; and that the bids received
must be competitive bids on the basis of the definite work so
ordered and described in the plans and specifications on file.

(2) The charter did not provide for competition between different plans and processes as well as competition between bidders upon the same plan or process.

(3) A resolution of the common council directing the improvement of a street with either sandstone blocks, bitulithic macadam, creosote blocks, or vitrified brick, and directing a call for separate bids for the work by the use of each of such materials, does not present opportunity for true competition between all bidders.    TIMLIN and KERWIN, JJ., dissent.

[2. Whether the provisions of ch. 124, Laws of 1891 (charter of Superior), prohibit the city from paving its streets with bitulithic pavement, a patented process, and, if so, whether such provisions invade the constitution of the United States, and the patent laws which protect a patentee in the exclusive right to sell his patented article anywhere in the United States, subject only to reasonable regulation by the states in the exercise of the police power, not determined.]

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action in equity brought by the plaintiffs, who are general taxpayers and lotowners in the city of Superior, to set aside a certain street paving contract between the city and the appellant company (a foreign corporation), and to enjoin the execution of the work and the issuance of special assessment certificates against the plaintiffs' lots to pay for that work. The facts were not in dispute, and judgment for the plaintiffs in accordance with the prayer of the complaint was rendered upon the pleadings. The following are the facts which are material to the questions discussed: The city of Superior is governed by a special charter, to be found as ch. 124, Laws of 1891. The provisions of the charter bearing on the case are briefly as follows: Sec. 63 provides that all public works which are estimated to cost exceeding $1,000 shall be let by contract to the lowest responsible and satisfactory bidder, that the board of public works shall advertise for proposals for such work for at least one week in the official paper, and that before such advertising "a profile or plan of the work to be done, together with the specifica-

tions, shall be placed on file in the office of the board of
public works for the inspection of bidders, and a form of
contract as the same will be required to be executed by bid-
ders shall be prepared and a copy of the same furnished to
any person desiring to bid on the work." Sec. 64 gives the
board power to reject any and all bids. Sec. 116 authorizes
the city to open, grade, pave with wood, stone, or other ma-
terials or otherwise improve streets and alleys. Sec. 117
provides that such improvements shall be chargeable to the
lots or parcels of land benefited thereby in proportion to the
benefits received, but that the total amount assessed shall
not exceed the entire cost of the work, nor shall the assessment
against any parcel exceed the benefit accruing to it, except
in case of sidewalks. Sec. 119 provides that, before changing
any established grade or ordering any work to be done on
any street in whole or in part at the expense of abutting lots,
the board of public works shall view the premises, determine
the benefits and damages accruing to each parcel, also the
entire cost of the improvement and the amount that should
be assessed to each parcel as benefits by reason of the change
of grade or improvement. Sec. 120 requires the board to
file in their office a report of their determination of the va-
rious questions so required to be considered by them. Sec.
122 requires the city clerk to notify the city council at its
next regular meeting of the filing of the report, and em-
powers the council to take such action on the report as it
deems advisable, providing that if no action be taken the re-
port shall be deemed confirmed. Sec. 123 provides that,
subject to the foregoing limitations, the council through
said board may determine the amount to be paid by bene-
fited real estate, and the amount to be paid by the city at
large on account of the improvement of a street. Sec. 127
provides that when any such improvement "shall have been
ordered to be done and the plans for the same containing a
description of the work, the material to be used, and such

other matters as will give an intelligent idea of the work required, shall have been filed in the office of the board of public works, where the same can be inspected by persons desiring to bid on such work," the board may advertise in the official paper for bids for doing the work.

The contract in question is a contract for the paving of Winter street, in said city, in front of the plaintiffs' lots with bitulithic macadam pavement, which is a patented pavement, the patent being owned by the appellant. The proceedings leading up to the execution of the contract were as follows: Certain property owners on said street petitioned the council for the paving thereof, and asked that the proceedings be such that there be competition in bids on four different kinds of pavement, viz., sandstone blocks, brick, creosoted blocks, and bituminous or bitulithic macadam. The council thereupon directed the board of public works to view the premises and determine the cost of the improvement with each of the materials named and make separate estimates for each, also to determine the benefits and damages to each parcel of land affected and make a separate report in case of the use of each material and determine the amount to be assessed against each parcel benefited. The board viewed the premises and determined the entire cost of the improvement, which it concluded would be the same whichever material was used, determined the amount of benefits and damages accruing to each parcel and the amount to be assessed against each parcel, filed its preliminary report, gave proper notice to the property owners, and after a hearing made its final report. Thereafter the city council confirmed said report, levied the assessments recommended by the board, and gave proper notice of such final determination. In due course the council adopted a resolution determining it to be necessary to improve Winter street with either sandstone blocks, bitulithic macadam, creosoted blocks, or vitrified brick, and directed the board to cause said street to be improved with any one of the

said materials on a concrete foundation, and to call for separate bids for the work by the use of each of such materials, and directing that the work be done by contract. The board thereafter caused separate plans and specifications for each of the four different kinds of pavement to be made and filed, using as specifications for the bitulithic pavement the specifications used by *Warren Brothers Company* for their patented pavement. They then advertised for bids for laying each of the four different pavements. Prior to this the *Warren Brothers Company* had filed with the board a proposal offering to furnish to any bidder to whom a contract might be awarded to pave a street their bitulithic pavement, all necessary material and necessary supervision, at $1.40 per yard. Pursuant to the notice there were received two bids for sandstone blocks, the lowest bid being $44,469.90, three bids for brick, the lowest of which was $38,691.15, three bids for creosoted blocks, the lowest of which was $41,423.65, and one bid (that of the appellant) for bitulithic macadam for the sum of $37,382.80. The city thereupon entered into a contract with appellant for paving the street with bitulithic macadam in accordance with its bid, and prior to the commencement of the work this action was begun.

*Louis Hanitch,* attorney, and *J. M. Head,* of counsel, for the appellant, contended, *inter alia,* that the constitution of the United States, and the laws of congress passed in pursuance hereof, protect a patentee in the exclusive right to make and sell anywhere in the United States the article patented, subject alone to the right of the several states to regulate the sale of the same by a reasonable exercise of the police power. The passage of an act by the legislature of a state, broadly prohibiting cities from purchasing or using any patented article, is clearly unconstitutional. *Seymour v. Osborne,* 11 Wall. 516; *Ex parte Robinson,* 2 Biss. 309; *Kimball v. Winsor,* 21 How. 322; *Hallida v. Hunt,* 70 Ill. 109; 1 Robinson, Patents, 54; Walker, Patents (4th ed.) §§ 150, 155; *Mc-*

*Culloch v. Maryland,* 4 Wheat. 316, 426; *Allen v. Riley,* 203 U. S. 347; *Railroad Co. v. Husen,* 95 U. S. 465; *Gibbons v. Ogden,* 9 Wheat. 1, 210.

For the respondents there was a brief by *Grace & Hudnall,* and oral argument by *H. H. Grace.* They contended, *inter alia,* that there was nothing in the case disclosing an attempt to prevent the sale of a patent, but a police regulation to prevent unfair competition and to protect all people from a monopoly and possible fraud, and that the act in question was a proper exercise of the police power of the state. *Manigault v. Springs,* 199 U. S. 473; Cooley, Const. Lim. 708; *People v. Wagner,* 86 Mich. 594, 24 Am. St. Rep. 141; *State ex rel. Kellogg v. Currens,* 111 Wis. 431; *Patapsco Guano Co. v. North Carolina,* 171 U. S. 345; *Crossman v. Lurman,* 192 U. S. 189; *Sherlock v. Alling,* 93 U. S. 99; *Powell v. Pennsylvania,* 127 U. S. 678; *Barbier v. Connolly,* 113 U. S. 27; *Minneapolis & St. L. R. Co. v. Beckwith,* 129 U. S. 26; *Jones v. Brim,* 165 U. S. 180; *J. H. Clark Co. v. Rice,* 127 Wis. 451; *Patterson v. Kentucky,* 97 U. S. 501; *Webber v. Virginia,* 103 U. S. 344.

The following opinion was filed January 8, 1908:

WINSLOW, C. J.   It will be seen from the foregoing statement of the provisions of the special charter of the city of Superior that the evident intent is that all public work involving the expenditure of any considerable amount of money shall be open to full and free competition and shall be performed by the lowest satisfactory and responsible bidder. In this respect the charter is quite similar to the general city charter, as well as to many, if not most, of the special city charters still existing.   It seems equally evident that the reasons for this requirement are that it was thought that by this means the danger of extravagant contracts would be lessened and the opportunity for making corrupt or collusive contracts with favored contractors would be practically

eliminated. These reasons manifestly apply with greater
force where the work is to be paid for either in whole or in
part out of assessments against private property specially
benefited by the improvement.

The first question presented in the present case is whether
there has been any such competition as the charter contem-
plates. The appellant claims that the charter may be prop-
erly construed as calling simply for competition between two
or more different plans or processes, neither of which is def-
initely adopted until after the bids are received, while the
respondents claim that it can only be construed as calling
for competition between bidders upon one plan or process
which has previously been definitely determined upon by
the city council. In *Ricketson v. Milwaukee,* 105 Wis.
591, 81 N. W. 864, a somewhat similar question was pre-
sented under a charter provision substantially like the one
before us. There the city council, without adopting definite
plans or specifications, called for bids for the erection of a
garbage crematory upon certain city lots with sufficient capac-
ity for the incineration of 100 tons of garbage per day to
be delivered in scows at the dock in front of the plant. A
number of bids were received, each specifying a plant of
essentially different construction, and one of these bids was
accepted, and a general taxpayer brought his action to en-
join the carrying out of the contract. The contract was
held void because no plans and specifications had been
adopted by the council prior to the call for bids. The ab-
solute necessity of such action was in that case assumed as
self-evident under the charter, and it was said that, by rea-
son of the failure to adopt plans and specifications, no
proper basis for bidding had been secured, and, further,
that "no one could tell which was the lowest bid because no
two would be on the same basis. That fact alone condemns
the action taken." The present case does not present the
precise question which was there met, because four sets of

plans and specifications, each calling for a different pave-
ment, were here placed on file before bids were called for, so
that a bidder on any one of the different plans was fully
informed as to the basis upon which he was bidding, and
there would be competition between two bidders who bid
on the same plan. But would there be any competition be-
tween the man who bid on the brick pavement and the man
who bid on the sandstone block? They would not bid on the
same basis any more than two bidders in the *Ricketson Case*
who bid on differently constructed plants. If, in order to
determine which of two bids is the lowest, the bidders must
bid on the same basis, as held in the *Ricketson Case,* then
plainly it could not be determined here which was the low-
est bidder as between two men bidding for the construction
of different kinds of pavement.

After all, however, the question is one of the reasonable
and natural construction of the provisions of the city charter.
Turning to the charter and remembering that the dominant
purpose is to secure full and complete competition between
bidders, let us examine its provisions and see whether they
will admit of the construction contended for by the appel-
lant. Sec. 63 provides that, "before proposals are adver-
tised for, *a* profile or plan of the *work to be done,* together
with the specifications, shall be placed on file in the office of
the board of public works for the inspection of bidders, and
a form of contract as the same will be required to be executed
by bidders" shall be prepared and furnished to any pros-
pective bidder. Sec. 127, which is specially applicable to
street or paving contracts, provides that "when any of the
works before mentioned *shall have been ordered to be done*
and the plans for the same containing *a description* of the
work, *the material* to be used, and such other matters as will
give an intelligent idea of the work required, *shall have been*
filed in the office of the board of public works, where the
*same can be inspected* by persons desiring to bid on such
work," bids may be advertised for.

The wording of both of these sections seems to us not only
to contemplate, but to definitely require, that the specific
work to be done, as well as the plans for that work, shall be
*determined* in advance of the advertisement for bids.   When
*any work shall have been ordered to be done* and the plans
therefor containing a description of the work, the material
to be used, and other matters necessary to give an intelligent
idea of the work have been filed, then, and not till then, may
bids be advertised for.   Can it be rationally said that any
specific work was ordered to be done here before bids were
solicited and received?   Is a resolution to the effect that a
street be paved with sandstone blocks, brick, creosoted blocks,
or bitulithic macadam a determination that it be paved with
any definite pavement or that it be paved at all?   Under
sec. 127 the work must first have been ordered to be done.
What work has been ordered to be done or what material to
be used by such a resolution as this?   Certainly, if the legis-
lature intended to provide for a competition between different
plans and processes as well as a competition between bidders
upon the same plan or process, they used apt language to con-
ceal rather than to reveal such intention.   We are unable to
gather any such meaning or intent from the sections quoted.
On the other hand they seem to us clearly to express in no
uncertain or doubtful language the requirement that a defi-
nite work done in a definite way, with definite materials, must
first be determined on by the council, that the plans and
specifications for this work must be filed, and that the bids
received must be competitive bids on the basis of the definite
work so ordered and described in the plans and specifications
on file.   In no other way can there be true competition be-
tween them all, and in no other way can there be in the full
and complete sense any lowest bidder.   This conclusion upon
the initial question in the case relieves us from the consid-
eration of the second question, which was much debated upon
the argument and which will be briefly stated.

The respondents claimed that, even if it should be held

that appellant's construction of the charter was right on the question already discussed, still the contract would be void under the authority of *Dean v. Charlton,* 23 Wis. 590, and *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099, because the bitulithic pavement manufactured by the appellant is made by patented processes. The appellant met this argument not only by the claim that there had in fact been full competition, but also by the claim that, if the charter be construed as prohibiting the city from purchasing a patented article, it would invade the constitution of the United States and the patent laws, which protect a patentee in the exclusive right to sell his patented article anywhere in the United States, subject only to reasonable regulation by the states in the exercise of the police power. As before indicated, we find it unnecessary to consider this question on account of the conclusion reached on the first question, which necessarily calls for affirmance of the judgment.

*By the Court.*—Judgment affirmed.

BASHFORD, J., took no part.

The following opinion was filed January 28, 1908:

TIMLIN, J. (*dissenting*). The requirements of the city charter of the city of Superior, and of city charters in general, that plans and specifications of work to be done be made and filed in a public office before proposals or bids are called for, are for the purpose of insuring and facilitating competition among bidders. There can be no difference of opinion about this. The authority of ancient and modern precedent in unbroken sequence commands us to give weight to this consideration in construing the charter. *Heydon's Case,* 2 Coke, 18; *Harrington v. Smith,* 28 Wis. 43. I think the making and filing of four different plans and specifications for four different kinds of pavement on the same street, three of which are unpatented, and one covered by letters

patent, and then inviting bids on each and selecting the lowest bid of all, does insure most perfect competition and is not expressly or impliedly forbidden by anything contained in the charter. Indeed, I consider it an ingenious and lawful method of securing competition against the patented pavement and worthy of a place in the laws relating to municipal affairs. I regret that it should be stricken therefrom by what seems to me a narrow and mistaken interpretation and that existing imperfections in municipal government should be increased by such interpretation. Upon each of the unpatented pavements the bidding is open to the public generally, and in order to be the lowest bidder of all the person tendering the patented pavement must put his price below that of the lowest bidder on either of the three unpatented pavements. This is enlarging, not restricting, competition. It adds competition in quality to mere competition in prices and enlarges the field of price competition. It effectually prevents any advantage arising from the monopoly granted by the letters patent. Were this a new question I should not hesitate to give this construction to the charter provisions on reason supported by authoritative rules of construction. But it is not a new question. In *Att'y Gen. v. Detroit,* 26 Mich. 263, under more restrictive charter provisions than those of the city of Superior, it was decided that in advertising for proposals to pave a street under a charter requiring contracts to be publicly let to the lowest responsible bidder the common council could lawfully cause specifications for each of several kinds of wood and stone pavement to be prepared and filed, take bids upon each, and thereafter select the lowest bidder of all. Cooley, J., said: "The greater the number of such pavements the larger is the opening for competition." Christiancy, C. J., said:

"The notice, by referring to the respective specifications, gave an equal opportunity to all persons, not only to enter into competition with those seeking to contract for any

*other* kind, but also (within the letter and spirit of the charter) to compete with all who chose to bid for any *one particular kind.*"

In this Michigan case, also, some of the specified and proposed kinds of pavement were covered by letters patent and others were not. In *Baltimore v. Flack,* 104 Md. 107, 64 Atl. 702, it was decided that when a municipal charter required that the contract for paving a street be awarded to the lowest responsible bidder, and three different sets of specifications, one for asphalt blocks, one for vitrified brick, and one for bitulithic pavement, were prepared and filed in advance of the proposal for bids, the designation or selection of the kind of pavement as required by the statute might be lawfully made after the bids were received, and that such procedure was lawful and proper notwithstanding one of the three kinds of pavement specified was covered by letters patent. The cases on this subject are reviewed in the opinion of the court. It is also said:

"There are two kinds of competition—the one, competition between different *things* which will equally answer the same general purpose; and the other, competition between the prices bid respectively upon *each* of those distinct things. When this general proposition is reduced to a concrete one and applied to the subject of paving a public street, it is perfectly obvious that there must be a selection by some one, at some time, of some material, before any paving can be done. . . . This may be done before bids are asked; and when it is thus done it is done privately, and nothing remains for competition except the *price* for which the work can be done with the selected materials. But it does not follow that a selection of the kind of pavement must be made in advance of the time when bids are called for. . . . It is a matter of common knowledge that individuals and private corporations in developing and expanding their various business enterprises constantly resort to this system of duplex competition with the most beneficial results; and it can scarcely be presumed that the legislature . . . de-

signed to deny to the city the facilities which individuals and private corporations avail of in prosecuting their divers activities."

This language is so appropriate to the instant case that I have taken pains to quote from the opinion at some length. I doubt if any decided case can be found to the contrary. Certainly none are cited in the majority opinion. The precedents which declare that there is no competitive bidding where no plans or specifications are made or filed in advance of the call for bids and where each bidder is required to make his own specifications are obviously not in point. I am not alone upon this last proposition. *Baltimore v. Gahan,* 104 Md. 145, 64 Atl. 716. See page 154 (64 Atl. 720). There is, in the cases where no specifications or no complete specifications are filed, no competition, because the bidders are neither bidding against one another nor upon the same thing. They compete neither in price nor in quality, as the manufacturer or dealer in shoes does not compete with the manufacturer of or dealer in cotton fabrics. I must submit this without further discussion to the intelligent legal critic upon the cases cited in the majority opnion. But it is not necessary that competitive bidders should tender precisely the same thing in order to insure competition when the call for bids is comprehensive enough to include the things tendered and each thing tendered is for the same general use and is required to compete in price and quality with every other thing tendered. In the latter case the bidders bid against one another. In the case at bar each group of bidders bidding upon one kind of unpatented pavement necessarily bids on the same thing. If there was only one kind of unpatented pavement specified and described the lowest of these would be the lowest bidder. But the person tendering the patented pavement must get below this lowest bidder not only upon one kind of unpatented pavement, but below the lowest bidder upon either of the three specified kinds of

unpatented pavement. This might, more frequently than when only one kind of pavement is specified, result in several bids, each the lowest in its class but all equal in amount, and would result in the quality of the thing tendered entering into the consideration of which bid was really the lowest. But these, I apprehend, are no valid objections when the charter, as in the instant case, does not expressly prohibit several specifications, does not expressly require that the determination of the kind of pavement to be used shall precede the call for bids, but does provide that contracts may be let to the lowest *satisfactory and responsible* bidder. *Baltimore v. Flack,* 104 Md. 107, 64 Atl. 702, and cases cited; *Baltimore v. Gahan,* 104 Md. 145, 64 Atl. 716.

KERWIN, J. I concur in the foregoing opinion of Mr. Justice TIMLIN.

