WEISE, Respondent, vs. CITY OF GREEN BAY, Appellant.

*April 29—May 24, 1910.*

*Municipal corporations: Special assessments for paving: Limitation of amount: Classification of pavements: Constitutional law: Due process of law: Statutes: Construction: Repeal.*

1. Sec. 959—35, Stats. (1898), as amended by ch. 329, Laws of 1909, limiting the amount to be assessed against the abutting property owner for the cost of street paving constructed on a concrete foundation, is not unconstitutional as an attempted unlawful delegation to cities of the power to exempt property from taxation. The classification of permanent pavements on a concrete foundation is a valid classification, and the class may properly be made the subject of special and peculiar legislation, notwithstanding that in some isolated and infrequent cases inequality may result.

2. The provision of the statute requiring that a lotowner who exercises the option to have the assessment against his property, spread over a term of years must agree that he will make no objection to any want of power or irregularity in the making of the assessment, and making the bonds issued in pursuance

of the option conclusive evidence of the validity of the pro-
ceedings, is not open to any constitutional objection as being
unreasonable and in effect a taking of property without due
process of law. The option is a privilege which the legisla-
ture could extend or not as it chose, and which, if extended,
could be made subject to such conditions as legislative discre-
tion approved.

3. The operation of said sec. 959—35 is not confined to those cities
which have special provisions in their charters exempting
property which has once been assessed for construction of a
pavement, from any subsequent assessments, but is general in
its character and extends to all cities to which the act as a
whole applies.

4. Ch. 539, Laws of 1909, passed eight days after the act amending
said sec. 959—35 (ch. 329, Laws of 1909), though containing
some general expressions which, in the absence of other stat-
utes *in pari materia*, would indicate an intent that assessments
for paving might be made to any amount against adjoining
property, must, in view of the closeness in point of time of the
two enactments, and the provision of sec. 2 of said ch. 539 that
it should not be construed as repealing any provisions of the
statutes, be construed as subject to the limitation of said
sec. 959—35 as amended.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

*T. P. Silverwood,* attorney, and *Jerome R. North,* of coun-
sel, for the appellant, cited, among other authorities, Charter
of Green Bay, Laws of 1882, ch. 169, subch. VI, sec. 1;
secs. 925—175, 925—182, Stats. (1898); ch. 310, Laws of
1893; ch. 539, Laws of 1909; *Boyd v. Milwaukee,* 92 Wis.
456; *Yates v. Milwaukee,* 92 Wis. 352, 357; *Black v. State,*
113 Wis. 205, 221; *Kingsley v. Merrill,* 122 Wis. 185, 196;
*Ramish v. Hartwell,* 126 Cal. 443, 58 Pac. 920; *Hayes v.
Douglas Co.* 92 Wis. 429, 444, 446; *Barber A. P. Co. v.
Ridge,* 169 Mo. 376, 68 S. W. 1043.

For the respondent there was a brief by *Kittell & Burke,*
and oral argument by *John A. Kittell.*

WINSLOW, C. J. This is an agreed case submitted under
sec. 2788, Stats. (1898). The facts are that the city of

*Green Bay,* which is a city incorporated under a special charter, but which has adopted that part of the general city charter law relating to city improvements (subch. XVIII, ch. 40*a,* Stats. 1898), constructed a permanent pavement with a concrete foundation on Adams street and charged the whole expense of that part of the pavement from the curb to the center of the street in front of two lots owned by the plaintiff against the lots, amounting to the sum of $396, or $1.92 per square yard of pavement. In 1892 the city had laid a cedar block pavement on the same street and charged $1.10 per square yard therefor against the plaintiff's property, which was paid, and the plaintiff claims that under the provisions of sec. 959—35, Stats. (1898), as amended by ch. 329, Laws of 1909, only the difference between $1.10 and $2 per square yard can now be charged against his property. The circuit court so decided and the city appeals.

The difficulties in the case arise out of the construction of somewhat inharmonious statutes relating to street improvements in cities. The first of these statutes is ch. 310 of the Laws of 1893, afterwards incorporated in the Statutes of 1898 as secs. 959—30 to 959—35, inclusive. This law was evidently passed for a very definite purpose. Pavements consisting of asphalt, brick, and other lasting materials resting on concrete foundations were at that time being introduced in the West, and the somewhat ephemeral wooden pavement was passing out of use. These new pavements were evidently regarded as forming a class by themselves, because they were, relatively speaking, permanent constructions, and would not require to be frequently renewed or rebuilt. They also were considerably more expensive, and hence their adoption would impose a much greater burden on the adjacent lot-owner. These differences were doubtless deemed to justify the classification of these pavements, and the passage of a law relating to them alone and providing that, when such pavements should be laid in cities exceeding 20,000 in population,

the council might grant to lotowners the option to pay their assessments in instalments running from five to ten years, instead of being obliged to pay the entire sum at once. The elaborate and full provisions of the law relating not only to the exercise of the option, but to the issuance of so-called improvement bonds against the lots, the effect of the bonds, and the manner of their collection leave no doubt on the mind that the legislative purpose in this act was to provide a complete and uniform code under which all of the cities of the state having the required population might lay these permanent and expensive pavements under a plan which would not operate to confiscate any adjoining property by an enormous assessment payable at once, but would permit of gradual payments distributed through a term of years. While the law was under legislative consideration it was evidently remembered that there were some cities in the state (like Milwaukee and La Crosse) whose special charters provided that, where adjoining property had once been assessed for the construction of a street pavement and the assessment had been paid, such property should not be again assessed for paving purposes. In order to meet this difficulty, sec. 6 of the original act (sec. 959—35, Stats. 1898) was incorporated therein, providing that no adjacent property should be exempt from assessment for such permanent pavement until such property should have paid in the aggregate for street pavements in front thereof the sum of $3 per square yard of roadway between the curb and the center of the roadway, and further providing that "where any property has paid less than said amount it shall be liable for any difference up to the amount of three dollars." By ch. 329 of the Laws of 1909 this last-named section was amended by reducing the limit of the aggregate amount which may be assessed against adjacent lots from $3 per square yard to $2.50 in cities of the first class and $2 in cities of the second or third class. The original law was vigorously attacked as unconstitutional soon after

its passage, but was declared constitutional by this court in
*Boyd v. Milwaukee,* 92 Wis. 457, 66 N. W. 603.   Since that
decision was made the law has not been seriously attacked,.
and has unquestionably been acted under many times by
many of the cities of the state.   The particular section in
controversy here, namely, the section placing a limit upon the
aggregate amount to be charged against adjacent lots, was
not attacked in that case, nor was it necessary to determine
whether the aggregate so fixed was intended to include the
sums paid for other pavements in the past or only the sums
which might be paid for permanent pavements with a con-
crete foundation.   This latter question was, however, in-
volved in *Loewenbach v. Milwaukee,* 139 Wis. 49, 119 N.
W. 888, where the validity of the whole act was again af-
firmed, and it was held that the $3 limit applied to both
original and subsequent pavements.   We have no disposition
to review at length these questions again.

It is true that some new arguments on the question of con-
stitutionality are now presented.   It is said that the section
in question is nothing more than an attempted unlawful dele-
gation to the city of the power to exempt property from taxa-
tion, because the city may build upon one street a permanent
pavement with a concrete foundation, and upon another
street a similar pavement with a stone foundation, and as-
sess the entire cost against adjacent lots on one street and only
ninety cents upon the other, although the lots on both streets
have been assessed $1.10 per square yard for wooden block
pavements previously laid.   Doubtless this result might
follow under the conditions supposed, but it would not neces-
sitate the condemnation of the law as unconstitutional.   If
the classification of the permanent pavement on a concrete
foundation was a valid classification when made, as we think
it was, then the class might properly be made the subject of
special and peculiar legislation, and the law must be held
valid notwithstanding that in some isolated and infrequent

cases inequality may result. Human foresight has not yet been able to devise legislation which always and under all circumstances operates with perfect justice.

Again, it is urged that because the statute requires that a lotowner who exercises the option to have the assessments against his property spread over a term of years must agree that he will make no objection to any want of power or irregularity in the making of the assessment, and because the bond issued in pursuance of the option becomes conclusive evidence of the validity of the proceedings, the law is unreasonable and in effect takes property without due process of law. In this connection *Hayes v. Douglas Co.* 92 Wis. 429, 65 N. W. 482, where a provision that the right of the property owner to contest such proceedings should be cut off at the end of thirty days after the assessment was made was held to be not due process of law, is relied on. The case is not applicable because under the law in question in that case the property owner had no choice. There was but one course of procedure authorized by the statute, and under this course the short limitation always applied. In the present case, however, the agreement to waive defenses is not required unless the property owner chooses to exercise the option offered him by which he can elect to have the assessments spread over a number of years. This option is a privilege given to him which the legislature could extend or not, as they chose, and which, if extended, could, of course, be made subject to such conditions as legislative discretion approved. The property owner does not have to accept it, but, if he does, he accepts it with its limitations.

As to the contention that sec. 959—35 was only intended to apply to that class of cities which have special provisions in their charters exempting property which has once been assessed for construction of a pavement from any subsequent assessments, to which class *Green Bay* does not belong, we are quite well satisfied that it ought not to prevail. The

language of the section is not happy. It apparently assumes that there is an existing exemption which is to be controlled and curtailed thereby, but we cannot doubt that it was intended to apply to all cities to which the act applies. Any other construction would result in producing diversity by means of a law which was unquestionably intended to secure uniformity, and we therefore hold that the limit beyond which assessments cannot go was intended to apply to all cities covered by the law.

Eight days after the passage of ch. 329 of the Laws of 1909, amending sec. 959—35, Stats. (1898), by changing the limit of aggregate assessments, another law was approved relating to the construction of pavements in all cities of the state, except cities of the first class, known as ch. 539 of the Laws of 1909, and the appellant claims that this act operated to repeal the limitation section under consideration. This law adds ten new sections to the statute numbered from 959— 30a to 959—30j. Careful study of the law demonstrates that its predominant purpose was to make it possible for cities to advertise for bids for different kinds of pavements in competition with each other, and thus remedy the difficulty which was held fatal to an assessment made under the charter of the city of Superior. *Stocking v. Warren Bros. Co.* 134 Wis. 235, 114 N. W. 789. In that case this court held that under the Superior charter, which is practically the same in its provisions as the general charter law, competition between two or more different kinds of pavements was not contemplated or permitted.

It is true that this law contains general expressions which, in the absence of other statutes *in pari materia,* would indicate an intent that assessments for paving might be made to any amount against adjoining property, but when we consider the fact that only eight days previously the legislature had acted on the question of limitation of the aggregate amount of such assessments, and that they also declared in

sec. 2 of the act now under consideration that "this act shall not be construed as repealing any provisions of the statutes, but shall constitute and prescribe a mode of making city improvements which any city may follow in any instance if the common council of such city shall so elect," we cannot doubt, that they intended to leave the limitation in force, and that the provisions of the last-named act must be construed as subject to the existing limitation.

*By the Court.*—Judgment affirmed.