WARNER, Respondent, vs. CITY OF ASHLAND, Appellant.

*May 1—May 31, 1913.*

*Municipal corporations: Street improvements: Letting contract two
years after assessment of benefits: Apportionment of cost: Ap-
peal, from what and when to be taken: Proceedings of common
council: Repeal of resolution.*

1. Under the provisions of the general city charter it is not essen-
tial that a contract for street paving should be let immediately
after the proceedings for the assessment of benefits are com-
pleted. Even after the lapse of a year or two the proceeding
may be resumed and a contract legally awarded.

2. The assessment of benefits to be made by the board of public
works and confirmed or corrected by the common council, as
provided by secs. 925—178 to 925—181, Stats., fixes the maxi-
mum amount that may be charged against a given parcel for
the proposed improvement, but the exact amount cannot be
fixed until a bid has been accepted and the amount chargeable
to the city has been determined as provided in sec. 925—182.
Then an apportionment of the total cost chargeable to the
property is to be made and assessed against each parcel in
proportion to the benefits assessed.

3. The appeal provided for in sec. 925—184 must be taken from
the assessment of benefits, not from the apportionment of the
actual cost, and must be taken within twenty days after the
final determination of the common council fixing such benefits,
due notice thereof being published. [Whether the limitation
of time is *dependent* on such publication, not decided.]

4. A resolution of the common council both confirmed the report of the board of public works assessing benefits for the paving of a street and made an apportionment of the actual cost chargeable to the property, based upon an accepted bid which was afterward rejected. Two years later, upon a reletting of the contract, the council again by resolution confirmed such report, but at the same time repealed the former resolution by number, adding the explanatory words "relating to the apportionment of the cost of the proposed pavement." *Held*, that the latter resolution repealed only so much of the former as related to the apportionment of the cost, and not that portion which confirmed the report of the board of public works, and it did not, therefore, extend the time for appeal.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Ashland county: W. B. QUINLAN, Circuit Judge. *Reversed.*

In June, 1907, the city of *Ashland,* pursuant to a petition therefor, began proceedings under subch. XVIII, ch. 40*a,* Stats., to pave Seventh Avenue West from Second street to Twelfth street with asphalt. The proceedings were in all respects regular and according to law, and ended in that year on October 8th, when the city council rejected a bid from the Barber Asphalt Company of $39,217.94, which was the lowest bid received that season. On August 20, 1907, the final report of the board of public works was confirmed by the city council by resolution numbered 582, and an apportionment of the cost of the paving chargeable to the property benefited, based upon the above mentioned bid of the Barber Asphalt Company, which on August 14, 1907, had been accepted by the common council by resolution numbered 574, was included in resolution 582. Notice of final determination of benefits and damages as provided by sec. 925—183 was duly published. Nothing further was done in the matter till June 6, 1909, when the board of public works was by resolution of the common council ordered to advertise for bids for the pavement of Seventh Avenue West. The board advertised' as directed, and on the 17th of July two bids

which had been received were opened, the lowest one being that of J. F. Hill for $32,470.95. On July 21, 1909, such bid was accepted and the contract awarded. On August 10, 1909, the city council met and passed a resolution "that the final report of the board of public works in the matter of the proposed improvement of Seventh Avenue West, which final report was filed in the office of the city clerk of the said city on the 22d day of July, 1907, be, and the same is hereby confirmed and adopted by this common council. . . . Resolved further, that resolution No. 574 and 582 relating to the apportionment of the cost of the proposed pavement on Seventh Avenue West be and are hereby repealed." The resolution then made a reapportionment of the cost of the proposed pavement upon the parcels of land chargeable therewith, which apportionment was lower than that contained in resolution No. 582, owing to the fact that it was based upon a bid of $32,470.95 instead of upon a bid of $39,217.94. Under the last reapportionment the city's share of the cost was $6,550.95 as against $7,843.59 under the former. No notice of final determination was published in 1909, but a "city improvement notice" pursuant to sec. 925—191 was published from the 16th day of September to the 7th day of October, 1909. On October 12, 1909, bonds were ordered issued for the improvement, and on October 30, 1909, the contract had been completed. On March 29, 1911, the plaintiff appealed from the final determination of the council on the ground that he had paid $1.72 per square yard for a former pavement which he claimed should have been deducted from the assessment in question, and that under ch. 329, Laws of 1909, his property was subject only to an assessment of twenty-eight cents per square yard.

The trial court held that the action of the council on August 10, 1909, was the final determination in the paving proceeding provided for by sec. 925—183, Stats., and that,

no notice of such final determination having been published as required by said section of the statutes, the time for appealing therefrom had not commenced to run, and the plaintiff's right to appeal had not expired when the appeal was taken. The court then found the amount of the illegal tax to be $1,156, with interest, and ordered judgment in favor of plaintiff for that amount with costs, from which judgment the defendant appealed.

For the appellant there was a brief by *W. S. Cate,* city attorney, and *M. E. Dillon,* of counsel, and oral argument by *Mr. Dillon.*

*Ben S. Smith,* for the respondent.

VINJE, J. That the proceedings of 1907 could be used as a basis of letting a contract in 1909 is supported both by authority and reason. In *Wright v. Forrestal,* 65 Wis. 341, 27 N. W. 52, a part of the improvement was let under a separate contract four years after the first contract was let. The statute gives the proper authorities the power to reject any or all bids (secs. 925—187, 925—90), and no time within which the work must be undertaken or completed is prescribed. It is a matter of common knowledge that, especially in northern cities, the paving of a street for a number of blocks is a work that requires practically a whole season to complete, and that, owing to labor conditions or the price of materials, it may not be deemed advantageous to undertake the work in any given year. When the council concluded on October 8, 1907, to reject the Barber Asphalt Company bid it was then too late to readvertise for bids that season. The record is silent as to why no bids were advertised for in 1908. Early in June, 1909, however, the board was directed to advertise for bids, and it did so, with the result that the bid of Mr. Hill was accepted and the contract awarded to him. The proceedings of 1909 were not new proceedings,

but merely continuations of those of 1907, taking up the latter where they were left after the rejection of the lowest bid received that year. The power to act under proceedings had a year or two previously is unquestioned. To hold otherwise would be to subject municipalities to needless waste of time and money in instituting new proceedings every time an acceptable contract could not be secured the season the proceedings were had.

Plaintiff claims that an appeal lies from the final apportionment by the city council of the exact amount that is chargeable to a specific parcel as based upon an accepted bid. This is erroneous. The statute provides that the board of public works shall make a final report in which there shall be an assessment of benefits and damages accruing to each parcel of real estate by reason of the proposed improvement. Secs. 925—178, 925—179. Notice of action upon this final report by the council is provided for, and the council may then confirm or correct the report or refer it back to the board for further consideration. Sec. 925—181. The council in acting upon such report must make a final determination of the benefits or damages to be assessed to the real estate in case of a proposed improvement, and a notice thereof is required to be published. Sec. 925—183. The next section (925—184) provides that "if the owner of any parcel of land mentioned in said notice feels himself aggrieved by reason of the determination made by the council he may, within twenty days after the date of such determination, appeal therefrom to the circuit court," and the following section provides that "the appeal given by the last section *from the report of the board of public works as confirmed by the council,* shall be the only remedy," etc. These two sections, as well as the statutes taken as a whole, clearly indicate that the appeal must be taken from the *assessment of benefits and damages* and not from an apportionment of a specific amount based upon a particular bid. The practice in many cities is not to

advertise for bids until the final report of the board of public works is confirmed by the council, or in a particular case it may not be expedient or possible to do so. The assessment of benefits fixes the maximum amount that may be charged against a given parcel for the proposed improvement. It does not fix the exact amount. That cannot be done until a bid has been accepted and the amount chargeable to the city has been determined as provided in sec. 925—182. *Hardy v. Waukesha*, 146 Wis. 277, 131 N. W. 352. Then an apportionment of the total cost chargeable to the property is made and assessed against each parcel in proportion to the benefits assessed. But the appeal lies not from such apportionment of the cost, but from the assessment of benefits. The final apportionment of the actual cost may not be made until long after the assessment of benefits has been made—in this case nearly two years. When the assessment of benefits is made the owner of each parcel is advised of the maximum amount that may be charged against such parcel, and if he thinks it too large he has his remedy by appeal. If the appeal were from the apportionment of the actual cost, then whenever a contractor whose bid had been accepted defaulted and a new contract had to be entered into and a different apportionment made, it would involve a new appeal. The statute contemplates but one appeal. Sec. 925—90 provides that when no proper bids shall be received, the council by a two-thirds vote of all its members may direct that the work be done under the supervision of such officer or officers as it shall designate. Here no apportionment could be made until a long time after the notice in sec. 925—183 is required to be published. It seems clear, therefore, that the statute contemplates that the appeal must be from the assessment of benefits and not from the apportionment of the actual cost, whether done by a contractor or by the city.

This brings us to the question of whether or not the council actually repealed the confirmation of the report of the

board of public works dated August 20, 1907. We shall assume for the purposes of the case that it had the power to do so, although that is not decided. As shown in the statement of facts, resolution No. 582 of August 20, 1907, contained a confirmation of the report of the board of public works and also an apportionment of the actual cost chargeable to the property based upon the acceptance of the Barber Asphalt Company contract which was accepted by resolution No. 574. The resolution of August 10, 1909, confirms the report of the board of public works which was already confirmed by the council on August 20, 1907, and then says: "Resolved further, that resolution No. 574 and 582, *relating to the apportionment of the cost of the proposed pavement* on Seventh Avenue West, be and are hereby repealed." This must be construed as a reconfirmation of the report of the board of public works and a repeal of only so much of resolution No. 582 as related to the apportionment of the cost based upon the Barber Asphalt Company contract. This is the result of what the council actually did, and that they so construed it is evidenced by the fact that no further notice of final determination was published. The council well understood that it was proceeding with the matter of paving Seventh Avenue West under the proceedings of 1907 and that the only thing that stood in its way was the resolution accepting the Barber Asphalt Company contract and the apportionment of cost based thereon. It was not necessary to reconfirm the report of the board of public works, but out of abundant caution, perhaps, the council did so. After the expiration of twenty days from the date of the final determination made by the council on August 20, 1907, due notice thereof having been published, the right to appeal was extinguished. *Newton v. Superior,* 146 Wis. 308, 130 N. W. 242, 131 N. W. 986.

It may be a serious question whether the time within which an appeal may be taken as prescribed by sec. 925—184

is contingent upon the publication of the notice of final determination required to be published by sec. 925—183. Sec. 925—184 provides the appeal may be taken "within twenty days after the *date of such determination,*" not within twenty days after the date of the first publication of such notice of final determination, as is provided in sec. 959—30*g*. If it should be held that the appeal must be taken within twenty days after the date of the final determination, irrespective of the publication of the notice mentioned in sec. 925—183, then the plaintiff's appeal is too late, whether it is held to be an appeal from the proceedings of 1907 or 1909. This question was not argued by counsel and is not determined herein.

The plaintiff not having taken an appeal within twenty days from the 20th day of August, 1907, when the council made the final determination of benefits to be assessed against his property, he lost the right thereto. The present appeal was taken too late and the court acquired no jurisdiction of the matter.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the appeal from the city council.

TIMLIN, J. (*dissenting*). It is to be noticed that in the proceedings of 1907 the bid of the Barber Asphalt Company was received and accepted on August 14, 1907, before the final determination by the city council, which final determination was on August 20, 1907. It is said in the statement of facts, which is part of the majority opinion, that "the proceedings were in all respects regular and according to law and ended that year on October 8th, when the city council rejected a bid from the Barber Asphalt Company of $39,217.94, which was the lowest bid received that season." This is the same bid which was on August 14, 1907, accepted. The assessment of 1907 made against the property of respondent and the proportion of the cost chargeable to the city were

based upon that bid. I agree that this was regular and according to law, for I acquiesced in the decision of *Hardy v. Waukesha*, 146 Wis. 277, 131 N. W. 352, on the ground that the different procedure there followed was merely permissible. The real point of decision in the last mentioned case was that, no matter what the benefits, no more than the cost of the improvement, keeping within the amount of benefits, could be assessed against the abutting land. I think it follows that when the bid mentioned was after having been once and, on August 14, 1907, accepted, but thereafter and on October 8, 1907, rejected, the council was at liberty to vacate, annul, and repeal the final assessment based on that bid, as it did, thus leaving the matter open so as to call for further bids, and upon receipt and acceptance of such later bids to make another assessment based upon the later bids. This the council did in the instant case. After having again advertised for bids and received one for $32,470.95, the latter bid was on July 21, 1909, accepted. On August 10, 1909, the city council adopted a resolution affirming the *final report of the board of public works* of July 22, 1907, and repealing the resolutions of 1907 assessing the cost of the improvement according to the Barber Asphalt Company's bid of that year, that is, assessing the cost of the improvement, less the amount chargeable to the city, upon the abutting lands of the respondent and other abutting lands. I consider this last to be the "determination made by the council" mentioned in sec. 925—184. The majority opinion considers the resolution of August 20, 1907, to be "the determination made by the council," and that from which the appeal must be taken. It seems to me that is in effect deciding that the "final determination" mentioned in sec. 925—183 must be made first. This, while not wholly devoid of humor, cannot be considered good law. Subch. XVIII of ch. 40a, Stats., is not very clear, but it should not be construed to mean that the preliminary estimate or assessment of benefits, and not

that made after the cost is ascertained, is the "final determination." In consequence of the difference of opinion between members of this court in, *Stocking v. Warren Bros. Co.* 134 Wis. 235, 114 N. W. 789, ch. 539, Laws of 1909, now secs. 959—30*a* to 959—30*j*, was enacted. *Weise v. Green Bay,* 143 Wis. 198, 126 N. W. 681. This act of 1909 provides clearly for the procedure in such cases. It is optional for any city to follow, and I think would save some confusion if it were followed. Under the construction given to subch. XVIII, ch. 40*a*, we have not only the paradoxical rule that "the final determination" comes first, but the aggrieved party must appeal before he knows whether any contract will be let or whether any cost of construction will ever be assessed against his property. He has only twenty days in which to appeal, and if the contract is not executed and the cost of the work ascertained within twenty days after such "final determination" he is appealing from something which does not aggrieve him in the least, to wit, a mere estimate of how much his land will be benefited in case a pavement were made. Applying the instant case: The respondent showed a right to recover back money because credits had not been given him for former payments for paving assessments as required by ch. 329, Laws of 1909. Under the repealed assessment of 1907 the amount chargeable against his property was $1,568.70; under the assessment of 1909 $1,296, allowing him in either case no rebate for former assessments as required by ch. 329, *supra*. The last assessment was paid in cash and the issue of improvement bonds. He could not know how much he would be entitled to recover until the final apportionment is made, and this may be never made if the contract for work is not executed. In this case, had he appealed from the assessment of 1907, he could recover nothing, because no money was collected from him on that assessment. It could not be known that the council would ever restore that proceeding. They might have commenced a new

proceeding, yet it is held that respondent's time for appealing expired twenty days after the assessment made on August 20, 1907, and thereafter repealed. This might not be of great practical consequence to the respondent because he did not appeal within twenty days from the "final determination" of 1909, but it is important to other cities, and in other cases; hence this dissent.