# THE JACKSONVILLE RAILWAY COMPANY

## *v.*

# THE CITY OF JACKSONVILLE.

*Filed at Springfield September 23, 1885.*

1. SPECIAL ASSESSMENTS *for improvement of street—necessity for an ordinance—and requisites thereof.* A valid ordinance is essential to proceedings by special assessment for the improvement of a street by a city. If the ordinance is invalid, a judgment confirming an assessment on property is not authorized.

2. An ordinance for the improvement of a public street, the cost of which is to be assessed, in whole or in part, upon abutting property, must specify the nature, character, locality and description of the proposed improvement.

3. An ordinance for paving a street partly by special assessment and the residue by general taxation, required the pavement to be what is known as the "Bloomington brick pavement," and the foundation thereof to be laid of cinders, sand, gravel, or other materials equally suitable, at least six inches deep, etc. The estimate of its cost, approved by the city council, showed that cinders were to be used. It was *held*, the ordinance was not obnoxious to the objection of uncertainty as to the materials to be used for the brick to rest upon. In such case the words, "or other materials," etc., may be treated as surplusage.

4. An ordinance for the paving of a street is not void for uncertainty, because it requires the brick pavement to be laid upon a foundation of sand, gravel or cinders.

5. Nor is such an ordinance rendered invalid by a provision requiring all the work done and materials used to be subject to the approval of the city engineer, and in accordance with the plans and specifications to be furnished by the city council. Such provision does not give him the power to determine the kind of materials to be used, but only the right to see that the materials required are used, and the work done as directed by the ordinance.

6. MUNICIPAL INDEBTEDNESS—*constitutional limitation—as affecting power to improve streets, etc.* The fact that a city has already exhausted its constitutional power to incur a debt, can not be shown to defeat a proceeding by it to improve a street by special assessment in part, and partly by general taxation. That question can not arise until the city seeks to borrow money or incur an indebtedness in that regard.

APPEAL from the County Court of Morgan county; the Hon. MONTREVILLE T. LAYMAN, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the appellant.

Mr. RICHARD YATES, and Messrs. SPRINGER & DUMMER, for the appellees.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

This appeal brings before us for review a judgment of the county court of Morgan county, confirming an assessment by the corporate authorities of the city of Jacksonville, against the road-bed and franchise of the Jacksonville Railway Company, for its ratable portion of the costs and expenses of constructing a brick pavement on that part of East State street which lies between the east line of East street and the east line of Illinois avenue, in said city of Jacksonville, to be known as the "Bloomington brick pavement." The commissioners estimated the cost of the entire improvement at $17,569.31. Of. this amount $915.43 was charged to the city, to be raised by general taxation, and the balance was assessed upon the abutting property, the appellant's portion being fixed at $1920. On appeal by the company from this assessment, it was reduced by the jury to $1062. Pending a motion for a new trial, the city entered a *remittitur* of two per cent on the amount found by the jury, which reduced it to $1040.76, for which sum the court entered final judgment, and the company appealed.

A reversal is urged, mainly on the alleged ground that the ordinance under which the assessment was made, as passed by the city council, is invalid. The objection, of course, goes to the foundation of the whole proceeding, and if well taken the judgment can not stand. The other points made in the brief go to the form rather than the substance of the proceeding.

It is claimed the ordinance is fatally defective in this, that it does not specifically determine the material of which the foundation of the pavement is to consist; that the power to

determine whether it shall be of sand, gravel, cinders, or other like material, is, by the ordinance, given to the city engineer, and if not given to him, then no means are provided for determining the question at all, and that in either case the ordinance would be void. In support of this view of the subject the cases of *Foss* v. *Chicago*, 56 Ill. 354, *Andrews* v. *Chicago*, 57 id. 239, *Lake Shore and Michigan Southern Railroad Co.* v. *Chicago*, 56 id. 454, and *Lake* v. *City of Decatur*, 91 id. 600, are cited. We fully concede the general principle recognized by these cases, viz: that an ordinance providing for the improvement of a public street, the cost of which is to be assessed, in whole or in part, upon the abutting property, must specify "the nature, character, locality and description of such improvement." This is nothing more than an express requirement of the statute authorizing municipal authorities to make assessments for such purpose. It is clear, therefore, that an ordinance which does not substantially conform to the requirements of the statute in this respect will confer no power on the corporate authorities to make the assessment. The question then resolves itself into this: Is the ordinance under which the present assessment was made, obnoxious to the objection urged against it?

The first section of the ordinance, after specifying the location of the improvement, and providing that it shall be paved with brick, proceeds as follows: "The pavement shall be what is known as the 'Bloomington brick pavement.' The foundation thereof shall be laid of cinders, sand, gravel, or other materials equally suitable, at least six inches deep, conforming to the grade to be established by the city, through the city engineer, surfaced by at least one inch of sand. The first course of brick shall be hard paving-brick, laid flat, all joints to be thoroughly filled in with sand,—this course of brick to be covered by at least one inch of sand. The upper course of brick shall be extra hard-burnt paving brick, laid on edge, all joints to be thoroughly filled with sand, leaving

one inch of sand on top,—all of the work done and material used to be subject to the approval of the city engineer, and to be done in accordance with the plans and specifications to be furnished by the city council of said city."

In pursuance of the ordinance, the city council appointed three commissioners to make estimates of the cost of the improvement, including labor and materials, and all other expenses attending the same, who, on the 5th day of September, 1884, submitted to the city council a written report of their action in the premises, wherein all the labor and materials required for the improvement, together with the cost thereof, are specifically enumerated, the items being as follows:

| | |
|---|---:|
| 8832 square yards of labor, at 28 cents, | $2472.96 |
| 706,000 top brick, at $11.65, | 8224.90 |
| 353,280 bottom brick, at $9.65, | 3406.45 |
| 92 cars cinders, at $7.50, | 690.00 |
| 98 cars sand, at $9, | 882.00 |
| Bring car track to grade, etc., | 985.00 |
| Engineering, | 200.00 |
| Commissioners' fees and court costs, | 60.00 |
| Collector's fees, | 344.00 |
| Total, | $17,569.31 |

This report, which was accepted and approved by the city council at the time of its presentation, shows conclusively that sand and cinders alone were estimated for the foundation of the proposed pavement. That the ordinance expressly provides for the use of just such material is conceded. Wherein, then, is the uncertainty in the ordinance complained of? Do counsel wish to be understood as holding that an ordinance is necessarily void because it gives a municipality or contractor the right to choose between two or more kinds of material equally suitable for a proposed improvement? Or do counsel maintain that the present ordinance, in order to be good, should have taken away absolutely all option in

respect to the use of the sand, gravel or cinders, by declaring specifically which should be used? We have no hesitancy in holding that such a construction of the statute would be exceedingly narrow, and wholly unwarranted by the words of the act. In many cases, we have no doubt, it would materially embarrass municipal authorities in making local improvements, by confining them to a particular kind of material, when other equally good material of the same general class might be had on as favorable or better terms, if an election were given.

The objection, however, is probably based mainly on the expression, "*or other materials equally suitable,*" etc., which immediately follows the words, "cinders, sand, gravel," the position being, that inasmuch as the ordinance is confessedly uncertain as to the materials intended to be comprehended in the expression in question, it is sufficient to bring it within the principle of the cases above cited. If the phrase in question was used with any specific purpose or object, it was doubtless intended to include all material of the same kind or class as that mentioned, if any such existed. Inasmuch as the articles proposed to be used, and upon which the estimates were made, are specifically named in the ordinance in question, whether the assessment would be good if the estimates were made upon other material not so specified, does not arise, and need not therefore be discussed. In the view we take of the matter, it may be admitted the expression, "or other materials equally suitable," is inoperative and void, on the ground suggested. But it does not at all follow that the ordinance is therefore invalid as to the kinds of material it specifically mentions. The objectionable part of the ordinance may be rejected as mere surplusage, and the ordinance still be good as to the residue.

In respect to the claim that the ordinance is an attempted delegation of power to the city engineer to determine what kind of materials is to be used, we regard it as clearly un-

founded. The ordinance attempts to do nothing of the kind. By a provision in it the engineer is simply given a supervisory power over the work,—not for the purpose of determining what kind of materials is to be used, but rather for the purpose of seeing that the materials used are of the kind and quality specified in the ordinance, and that the work is done as therein directed.

Appellant offered to show, on the trial, that the city of Jacksonville had no power to incur further indebtedness,— that its existing indebtedness already largely exceeded the constitutional limitation which forbids any county, city, etc., from becoming "indebted  *  *  *  to an amount, including existing indebtedness, in the aggregate exceeding five *per centum* on the value of taxable property therein," etc. (Const. art. 9, sec. 12.) The court declined to admit the evidence, and this is assigned for error. The position of appellant, as we understand it, is, that a town or city which has exhausted its constitutional power to incur a debt, has no power to pass an ordinance providing for local improvements which contains a provision, as was the case here, that a part of the cost of the improvement shall be raised by general taxation. We fail to perceive any force in the point made, and the authorities cited by appellant clearly do not sustain that view of the law. No question as to the power of the city of Jacksonville to incur a debt is presented by this record. It does not appear from anything before us that the city has ever asked any one to credit it on account of the proposed improvement. It has not incurred a debt in respect to it, nor is it threatening to do so. The city simply proposes to raise its share of the expenses by general taxation. It is not even attempting to anticipate a tax levy. Should it fail to raise the money in the manner proposed, and it should then attempt to borrow it, or to hire some one to do the work on the city's credit, then, upon the complaint of a tax-payer, the constitutional provision referred to might be invoked, but

until then no question of that kind can arise. It may be assumed that if the city finds it can not raise its share of the necessary funds by taxation, as contemplated in the ordinance, it will abandon the enterprise altogether, rather than attempt to raise it in violation of the constitution.

The claim is also made that the assessment was too high, that the verdict of the jury is not supported by the evidence, and that the judgment should be reversed for this reason. It was the peculiar province of the jury to settle this question, and they have done it. As we see nothing to the contrary, we must assume they faithfully and conscientiously discharged this duty to the best of their ability. Opinions of witnesses in respect to the value of property of this kind most always take a very wide range, and can seldom be harmonized. The present case is no exception to the rule.

Upon a careful review of the evidence we are unable to say the verdict is clearly contrary to the weight of the evidence, and unless we could do this we would not be warranted in reversing the judgment on the ground the evidence does not sustain the verdict.

The judgment will be affirmed.

*Judgment affirmed.*