CASE 50—ACTION BY WILLIAM FINERAN AND OTHERS AGAINST THE CENTRAL BITULITHIC PAVING COMPANY AND OTHERS TO HAVE A CERTAIN PAVING CONTRACT DECLARED VOID.—OCT. 21.

# Fineran, &c. v. Central Bitulithic Paving Company, &c.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

DEMURRER TO PLAINTIFF'S PETITION SUSTAINED AND THEY APPEAL. REVERSED.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—NECESSITY OF BIDS—ORDINANCES—MONOPOLIES.

Held:  1. An ordinance requiring a contract for construction of streets to be let, after advertising, to the lowest and best bidder, passed pursuant to a charter provision that the council shall by ordinance adopt a uniform system to govern street construction, is binding till duly modified or repealed.

2. Requirement of an ordinance for competitive bidding for construction of a street is not satisfied where, as known to the council, there is but one bona fide bid.

3. Under an ordinance requiring contracts for construction of streets to be let to the "lowest and best bidder," an ordinance providing that a street shall be constructed with a certain material, which can be done by only one party, without placing the work in competition with other like or equally good material, is void.

SAMUEL C. BAILEY AND STRICKLER & JOHNSON, FOR APPELLANTS.

## PROPOSITIONS AND CITATIONS.

The city council of the city of Newport having, under an ordinance which precluded competitive bidding, and required a street to be paved with a patented composition known as "bituminous macadam," awarded a contract for the paving of the street with

that composition to a corporation having the control of the patented article, and the exclusive right to lay streets therewith, and which was the sole person that could make a *bona fide* bid therefor, the contract was void. Ky. Stats., secs. 3094, 3096 and 3103; Gen. Ordinance of City of Newport, app. May 7, 1894; Worthington v. City of Boston, 41 Fed., 23; Fones Hardware Co. v. Erb, 54 Ark., 645; Dolan v. Mayor, &c., 4 Abb. Pr. N. S., 397; Smith v. Syracuse Improvement Co., 161 N. Y., 484; State v. City of Elizabeth, 35 N. J. L., 351; Dean v. Charlton, 23 Wis., 590; Burgess v. City of Jefferson, 21 La. Ann., 143; Nicholson Paving Co. v. Painter, 35 Cal., 699; Fishburn v. Chicago, 191 Ill., 338; Beach on "The Modern Law of Contracts," vol. 2 sec. 1108.

### CASES DISTINGUISHED OR DISCUSSED.

Hobart v. City of Detroit, 17 Mich., 246; Holmes v. Common Council of Detroit, 120 Mich., 226; Attorney General v. City of Detroit, 22 Mich., 263; Barbour Asphalt Paving Co. v. Hunt, 100 Mo., 22; Silsby Mfg. Co. v. Allentown, 153 Penn. St., 319; Kilvington v. Superior, 83 Wis., 222; Yarnold v. Lawrence, 15 Kan., 126; People v. Van Nort, 65 Barb., 331; In the Matter of Eager, 46 N. Y., 100; In the Matter of Anthony Dugro, 50 N. Y., 513; Baird v. Mayor, &c., of New York, 96 N. Y., 581; Newark v. Barnell, 57 N. J. L., 424.

C. J. & W. W. HELM AND AUBREY BARBOUR, FOR APPELLEES.

### QUESTIONS DISCUSSED.

The right of the city of Newport to reject all bids for street improvements.

The right of the city of Newport to contract for a patented material for street improvements.

### AUTHORITIES CITED AND CONSIDERED.

Ky. Stats., secs. 3094, 3096, 3103 and 3104; Gen. Ordinance of city of Newport, app. May 7, 1894; Louisville City Railway Co. v. City of Louisville, 8 Bush, 415; Chicago v. Rumpt, 45 Ill., 90; 92 Am. Dec., 196; Peabody v. Chicago Gas Trust Co., 130 Ill., 268; Foss v. Cummings, 149 Ill., 353; People v. Flagg, 17 N. Y., 584; Worthington v. City of Boston, 41 Fed., 23; Smith v. Syracuse Improvement Co., 161 N. Y., 484; State v. City of Elizabeth, 35 N. J. L., 351; Dean v. Charlton, 23 Wis., 590; Burgess v. City of Jefferson, 21 La. Ann., 143; Nicholson Paving Co. v. Painter, 35 Cal., 699; Fishburn v. Chicago, 191 Ill., 333; Beach on "The Modern Law of Contracts," vol. 2, sec. 1108;

Hobart v. City of Detroit, 17 Mich., 246; Holmes v. Common Council of Detroit, 120 Mich., 226; Attorney General v. City of Detroit, 22 Mich., 263; Barbour Asphalt Paving Co. v. Hunt, 100 Mo., 22; Silsby Mfg. Co. v. Allentown, 153 Penn. Stat., 319; Kilvington v. Superior, 83 Wis., 222; Yarnold v. Lawrence, 15 Kan., 126; in the matter of Anthony Dugro, 50 N. Y., 513; Baird v. Mayor, &c., of New York, 96 N. Y., 581; Newark v. Barnell, 57 N. J. L., 424.

OPINION OF THE COURT BY JUDGE NUNN—REVERSING.

This appeal is from a judgment of the Campbell circuit court sustaining a demurrer to the petition of appellant. The petition is in two paragraphs. After setting forth the usual and formal averments, we quote in substance such portions as are necessary for the determination of the question before us: "That on May 8, 1902, the property holders owning more than two-thirds of the front feet of all the property fronting upon Columbia street, in Newport, Ky., between Third and Fourth streets, petitioned the general council of the city in a written petition for the reconstruction of Columbia street between Third and Fourth streets with cement curb and gutter and a roadway constructed of brick or other improved material. That after this petition was presented to the council, it, by a vote of two-thirds of the members-elect of both boards, the vote in each case being recorded on the journal of the board, passed the following resolution: "Be it resolved that the reconstruction of Columbia street, between Third and Fourth streets, by grading, combination cement curb and gutter, and bituminous macadam roadway, is hereby declared a necessity, and that the same be done pursuant to the provisions of the act governing cities of the second class and the ordinance of May 7, 1894, of the city of Newport, regulating the same; and that the city engineer report a grade for said part of Columbia street, plans and

specifications for the reconstruction of same, and an esti-
mate of the cost and rate per foot of property fronting or
abutting thereon." Thereafter the city engineer, in the
manner prescribed by law and the ordinances of the city,
advertised for bids for the reconstruction of this street
according to the provisions of this ordinance, and
thereafter, to-wit, on the 4th day of June, 1902,
two bids, and no more, for the reconstruction in
conformity with this ordinance, were duly received
and opened by the committee appointed by the
general council to receive and open bids, who reported
same to the general council. The bids are as follows: The
appellee the Central Bitulithic Paving Company, $4,014.25,
and Joseph Collopy, $4,214.60. And it was thereafter re-
solved by the general council that a contract for the recon-
struction of this street with cement curb and gutter and
bituminous macadam roadway be awarded to the appellee
paving company at its said bid. This contract was en-
tered into, and the city's and abutting lot owners' parts
each cost more than $2,400, and the paving company was
then engaged in paving the streets under this contract. It
is alleged that by an ordinance of the city, a copy of which
was filed, entitled "An ordinance prescribing the method of
procedure governing and regulating the construction and
reconstruction of all public ways and sidewalks in the city
of Newport, Ky," approved May 7, 1894, then in force, and
continuously in force since that time, it was provided that
a contract for the reconstruction of any street in the city
should be awarded to the lowest and best bidder therefor;
that bituminous macadam was then, and had been continu-
ously since March 13, 1902, a patented composition; that
the machinery for making and laying this composition is
patented; that the Central Bitulithic Paving Company then

had, and continuously has had since last-mentioned date, exclusive control of this patented composition and the machinery for making and laying same, and the sole right to construct roadways of that material in that city and vicinity; that the method of making this bituminous macadam and constructing roadways therewith was known only to those having control of this patent, and that no one except the Central Bitulithic Paving Company could make, or could have made, a *bona fide* bid for the reconstruction of this street with this material; that bituminous macadam is greatly, inferior to vitrified brick for the reconstruction of a roadway; that the bid offered by Joseph Collopy for $4,214.60 was a sham bid; that this bid was made by Collopy in pursuance of a conspiracy entered into between him and the Central BitulithicPaving Company, by which it was agreed that Collopy should offer a higher bid for the reconstruction of this street than that offered by the paving company; that each and all of the members of the general council at the time this bid of Collopy was received knew that it was a sham bid, and that neither Collopy, nor any one except the Central Bitulithic Paving Company, could construct the bituminous macadam roadway in that city; that each and all of the members of the general council well knew, and had continuously known since May 8, 1902, that the manufacture of bituminous macadam and the construction of the roadways therewith was and is exclusively controlled by the Central Bitulithic Paving Company, and that no one except the Central Bitulithic Paving Company could make a *bona fide* bid for the reconstruction of this street with this material; that this contract between the city and this paving company was in violation of the ordinance of May 7, 1894, particularly that part thereof which provides that a contract for the recon-

struction of a street of the city shall be awarded to the lowest and best bidder, and is void, etc. It is admitted that the city council of Newport had duly passed an ordinance May 7, 1894, providing that a contract for the reconstruction of a street of that city should be awarded to the lowest and best bidder, and that this ordinance was still in effect, and had never been repealed or modified. In view of this admitted fact the sole question presented upon this appeal for determination is whether or not the resolution of date May 8, 1902, requiring the reconstruction of Columbia street to be made with bituminous macadam, and the contract with the paving company with reference thereto, were or not authorized and valid. In other words, had the city council of this municipality the power to award a contract for the paving of a street with a patented composition to a corporation having the control of the patent and the exclusive right to lay streets with the patented composition, and which was the sole person that could make a *bona fide* bid therefor, under an ordinance which precluded competitive bidding, and required the street to be paved with this patented composition? In effect it is contended that the ordinance of May, 1894, requiring competitive bids for the reconstruction of streets, was passed by the city council only; that, the charter of cities of the second class being silent with reference thereto, the council had the power and right to disregard the requirements of this ordinance. And it was also contended that, even if this requirement of competitive bidding had been in the charter, a compliance with the forms, as was done in this case, would have been sufficient. But, even if a compliance with the form was not sufficient, still it was not applicable to a case like this, where there could be no competitive bidding, as competitive bidding would deprive the city of availing itself of the benefit of patented articles.

By the charter governing second-class cities in this Commonwealth it is provided that the general council shall by ordinance adopt a uniform system to govern and regulate the construction and reconstruction of all public ways and sidewalks of the city. Under the authority given them by the charter the general council of the . city of Newport passed such ordinances, and one requiring that in the construction and reconstruction of its streets the contract for same should be let, after advertising, to the lowest and best bidder. These laws or ordinances were as binding on the council as if the same had been inserted in the charter, until modified or repealed by the council in the way and manner provided by law. This provision in the ordinance was evidently inserted for the benefit and protection of the taxpayers and all the citizens, and especially those owning abutting property on streets to be constructed and reconstructed; and, in our opinion, the council had no right and power to ignore the provisions of this ordinance.

We can not agree with the contention that, if the requirement of competitive bidding was necessary, a compliance with the forms, as was done in this case, would have been sufficient. It is admitted by the demurrer in this case that Collopy, the other bidder, agreed and entered into a conspiracy that they would go through the forms of a bidding, and that Collopy was to offer a higher bid for the work, and that each and all of the members of the council knew this fact, and also knew that appellee Central Bitulithic Paving Company could only make a *bona fide* bid for the reconstruction of this street with this material, and that they knew this when they passed this ordinance of May, 1902, fixing bituminous macadam as the only material for the reconstruction of this street. To say the law requiring competitive bidding was binding, and to accept.

such competitive bidding as a compliance therewith, would be a farce.

The other proposition—and the only real question to be decided—is more serious, and that is whether or not the law requiring competitive bids was intended to be and can be made applicable to things or material for the construction or reconstruction of streets where it is impossible to have competition as in this case, and thus prevent patent processes from being used, and the city from using such material when it deems it to be for the best interest of the city so to do. This court has never passed upon this question, and the courts of other States are divided upon it. The right of a city to avail itself of patented inventions in the improvement of streets, etc., where the law required the letting of contracts to the lowest bidder, has been before the courts of several States, and the adjudications thereon are not uniform, and the courts are not unanimous in their opinions. In Wisconsin, California, Louisiana, New Jersey, and Illinois the right has been denied, while in Michigan, Kansas, New York, and Missouri it has been sustained. These cases appear to discuss ordinances or charters that required the city council to accept the bid of the lowest responsible bidder, not giving any discretion to the council except as to solvency—unlike the ordinance in this case, which required the council to accept the lowest and best bid, which gave the council the discretion to accept the bid of the lowest and best bidder after considering all the questions involved, such as price, quality, and durability of material, responsibility of the bidders, the interest of taxpayers of the whole city, and especially of those who owned abutting property. See the case of Trapp v. City of Newport, 25 R., 224, 74 S. W., 1109. The substance of the reasons given in the cases decided by the courts of

Michigan, Kansas, New York, and Missouri in upholding
an ordinance requiring a street to be constructed or recon-
structed with a patented article, and where, from the
nature of the case, there could be no competition, are given
in the case of Hobart v. The City of Detroit, 17 Mich., 246,
97 Am. Dec., 185, decided by a divided court. In that case
a plaintiff sought to enjoin a tax levied on a lot owned by
him for the purpose of paying the expense of paving in
front of it with Nicholson pavement, upon the ground that
the contract for the pavement was illegal. The charter of
the city of Detroit provided that no contract for
any public work, where the amount of such con-
tract exceeded $200, should be let or entered into
except to and with the lowest responsible bidder. The
right to lay the Nicholson pavement in Detroit at the time
this contract was let was owned exclusively by the firm of
Smith, Cook & Co., the contractors, who alone, therefore,
could and did bid for the contract, and, there being no pos-
sibility of a competitor, the contract was awarded to them
on their own terms. In denying the plaintiff the relief
sought, the court, by Cooley, C. J., said: "The doctrine of
the complaint leads to this conclusion: That wherever,
from the nature of the case, there can be no competition,
the city can make no contract, however important or nec-
essary for the interest of the city, since contracts, except
by public letting are forbidden by the express terms of the
statute, and those by public letting are forbidden by an im-
plication which is equally imperative. And, if applied in
this case, however much the mode of paving may exceed
all others in utility, it can not be adopted in the city of
Detroit, or in any other city with like provisions in its
charter, even although the proprietors of the patent might
be willing to lay it on terms more advantageous to the

·city than those on which pavement of less value could be procured." On the other hand, the substance of the cases deciding against the validity of such ordinances and contracts by the courts of Wisconsin, California, Louisiana, New Jersey, and Illinois is given in the case of State of New Jersey .v. The City of Elizabeth, 35 N. J. Law, 351. The city council of the city of Elizabeth had passed an ordinance "that Morris avenue, from the track of the Central Railroad Company of New Jersey to the city line should be paved with Stow foundation pavement." Sealed proposals for paving in accordance with the ordinance were received from John Bryan & Co., and, they being the only bidders, the contract was awarded to them at their bid. John Bryan & Co. owned the exclusive right to lay the Stow foundation in the city of Elizabeth. Section 123 of the charter of 1863 of Elizabeth directed that contracts exceeding $100 "shall be advertised, and shall, at all times, be given to the lowest bidder." In that case the court said: "This section of the statute contemplates the public advantage of an open, free competition in doing work and furnishing materials for all public improvements, which is inconsistent with the exclusive right to sell a patented article previously selected and alone acceptable. In the case of John Coar et al. v. Jersey City (at the present term of this court) [35 N. J. Law, 404] it is decided that, where the resolution of the city council was to pave with the Nicholson pavement, that being a patented pavement, and the right to use it in Jersey City exclusively held by the only bidder for the work, there was not and could not be any competition within the intent of the charter, and for that reason the resolution and proceeding in awarding the contract to such bidder should be set aside. It requires considerable ingenuity to avoid such a reasonable

conclusion from such plain and direct statutory require-
ments. No one can compete on equal terms with a man
who controls the sale of the thing needed. Bidding under
such a condition is but a form, and the result must almost
necessarily be deceptive and injurious to persons who are
to be assessed for payment. There can hardly be a lowest
bidder, within the intent of the charter where
there can be in reality but one bid. This ques-
tion does not appear to have been considered in State
v. Ayers, (June term, 1871) for the reason, probably, that
there are other provisions in the charters of many of our
cities taking patented processes out of the operation of a
similar section. The policy of such exception is not with-
in our province to determine after legislative authority is
given, but I must give a hearty approval of the expression
used by Judge Campbell (dissenting opinion) in the Detroit
Case, where he says: 'I can conceive no more fruitful
source of possible inducements to corruption than the mo-
nopoly of paving the streets of a large city.' "

It is unnecessary for this court to determine which doc-
trine is correct, that of Michigan or that of New Jersey,
for the reason that the charter or ordinance under consider-
ation in these cases required the council and made it im-
perative that it should accept the bid of the lowest respon-
sible bidder. The ordinance in the case at bar required the
council to accept the bid of the lowest and best bidder, and
the reasoning given by the court in the case of Fishburn v.
Chicago, 171 Ill., 338, 49 N. E., 542, 39 L. R. A., 482, 63 Am.
St. Rep., 236, decided February 14, 1898, is peculiarly appli-
cable to the case under consideration. The court in that
case said: "If the requirement that the asphaltum to be
used in the improvement should be obtained from Pitch
Lake, in the Island of Trinidad, tended to restrict competi-

tion among those who might desire to become bidders for the performance of the work of improving the street, or tended to create a monopoly in favor of any one having for sale the asphaltum necessary to be used in the work of paving the street, it would fall under the ban of this general rule of the law, and must be declared inoperative and void. But it may be said that cities, in the construction of public improvements, ought to have, as have individuals in the construction of private structures, the right to select for use the article or substance best fitted and adapted to the purpose, and that to deprive the public of the right to select and use such superior articles is opposed to public policy, and positively disadvantageous to the public. The force of this argument must, of course, be admitted; but upon reflection it is readily seen it is not necessary to foster and create a monopoly and prevent competition in the letting of public contracts by providing in ordinances that a certain substance or article, and no other, shall be used. If it be the judgment of the city council that the most suitable and best materials to be used in any contemplated improvement is the product of some particular mine or quarry, or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance, or compound the standard of quality or fitness, and to require that material equal in all respects to it should be employed. An ordinance making it indispensable that an article or substance in the control of but a certain person or corporation shall be used in the construction of a public work must necessarily create a monopoly in favor of such person or corporation, and also limit the persons bidding to those who may be able to make the most advantageous terms with the favored person or corporation. If all the ordinances adopted by the city council of the city of Chi-

cago providing for the paving of the streets and public places in the city should select the stock in trade of a particular firm or corporation as the only material to be used in making such street improvements, the evil would be intolerable; and, if they may lawfully select such article in an ordinance, it can not be unlawful to make it the settled policy of the city that material for paving the streets shall be purchased from but one seller." The ordinance in the case at bar directed that this street be improved with bituminous macadam, and it is admitted that the appellee the Central Bitulithic Paving Company had the complete and exclusive control of this substance, and that no one but it could have made a *bona fide* bid for the construction of this street with this material, and that each member of the council knew these facts at the time the ordinance was passed. In Beach on the Modern Law of Contracts (vol. 2, section 1108) it is said: "Whatever tends to prevent competition between those engaged in an employment or business impressed with a public character is opposed to public policy, and therefore unlawful; and whatever tends to create a monopoly is unlawful, as being contrary to public policy. All grants creating monopolies and acts tending to prevent proper competition are, by common law, illegal and void."

For the reasons given, we are of the opinion that the ordinance requiring the street to be improved with bituminous macadam, without placing it in competition with other like or equally as good material for such purposes, was and is void, and the court erred in sustaining a demurrer to appellant's petition. Wherefore the judgment of the lower court is reversed, and the cause remanded for further proceedings consistent herewith.

Judge Paynter dissents.