PETTIGREW, Appellant, v. CITY OF SIOUX FALLS et al., Respondents.

(150 N. W. 772.)

(File No. 3648.  Opinion filed January 22, 1915.  Rehearing denied March 8, 1915.)

1. **Municipal Corporations—Special Assessments—Street Paving—Statute—Strict Construction—Two-fold Purpose.**

   The authority to assess abutting property for street improvements is statutory, and the statute will be strictly construed to protect rights of owners. Pol. Code, Sec. 1303, reveals the purpose of enabling owners to intelligently judge as to desirability of the improvement, and an opportunity to protest; and to insure economic bidding for public improvements.

2. **Same—Street Improvement—Resolution, Description in—Naming Several Materials in Alternative—Statute, Construction—Monopolistic Control—Competition.**

   Under Pol. Code, Sec. 1303, as amended by Laws 1911, Ch. 95, and Laws 1913, Ch. 126, providing that a resolution for street improvement shall give a description of the proposed improvement, held, that a resolution for street paving, which names several materials in the alternative, and declared that the paving and work shall be done in accordance with plans and specifications for each of the described pavements on file in city engineer's office, is sufficient; that the statute permits the stating of two or more proposed materials in the alternative, and such construction of it will neither render inoperative an integral part thereof, nor defeat the construction of public improvements with materials which, though subject of monopolistic control, may be the best material, while allowing competition between different kinds of material and between parties prepared to use the same kind of material.

**3.   Same—Installment Assessments—Ordinance, Necessity For.**

Under Pol. Code, Sec. 1303 and other sections of Art. 16, entitled "Local Improvements," a resolution providing for special assessment for street paving, to be paid in installments assessed against abutting property, without an 'ordinance at any stage of the proceeding, is sufficient, where there was a general ordinance in force which provided that all assessments for paving streets might be collected in installments; since it is only when assessments are to be divided into installments that an ordinance is necessary, under Art. 17 (Sec. 1333 et seq.), relating solely to division of such assessments.

**4.   Same—Street Improvement Assessments—Installments—Statutes —"Ordinance" Meaning "Resolution"—General Ordinance For Installment Assessments.**

There being, under Art. 16, concerning assessments for street improvements, no ordinance providing for improvements mentioned in Sec. 1333, Pol. Code, which provides that when a city council deems it necessary to pave any street, and shall have taken all steps prescribed in Art. 16 (Sec. 1299 et seq.) entitled "Local Improvements," and has so provided by "ordinance," the amount of special assessments therefor may be divided into installments, and Sec. 1337, providing that when any city desires to collect special assessments by installments, the "ordinance" for the improvement shall also state that the same shall be collected by installments, held, that Sec. 1333 provides two conditions precedent to a division of an assessment, first, that the officers have proceeded in accordance with Secs. 1299 et seq. of Art. 16, and, second, that there must exist an ordinance for division of assessments into installments, which ordinance shall be passed prior to, or at the time of the resolution for street improvement. Held, further, that Sec. 1333 does not require a separate ordinance preceding or accompanying the resolution proposing each project for improvement, but the city may pass a general ordinance providing for payment of assessments in installments, and, where such general ordinance exists, it is unnecessary to adopt one for each improvement.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Bessie V. Pettigrew against the City of Sioux Falls and others, to have declared void a street paving contract, and for a permanent injunction against enforcement of the contract. From an order denying a temporary injunction, plaintiff appeals. Affirmed.

*Bailey & Voorhees,* for Appellant.

*D. J. Conway,* for Respondents.

(1) Under point one of the opinion, Appellant cited: City of Bluffton v. Miller, 70 N. E. Rep. 989.

(2) Under point two of the opinion, Appellant cited: Coggshall v. City of Des Moines, 78 Iowa, 235; City of Bluffton v. Miller, 70 N. E. Rep. 989; Oklahoma City v. Shields, (Okla.) 100 Pac. 559; Garner v. City of Anniston, 59 So. Rep. 654; Schwiesau v. Mahon, 128 Cal. 114; Piedmont Paving Company v. Allman, 68 Pac. 493; Dickey v. Holmes, 83 S. W. 982; City of Alton v. Middleton's Heirs, 158 Ill. 442; Lusk v. City of Chicago, 176 Ill. 207; Whittaker v. Deadwood, 23 S. D. 538; Mason v. City of Sioux Falls, 2 S. D. 636.

Respondent cited:

Whittaker v. Deadwood, 23 S. D. 538; Nixon v. City of Burlington, 115 N. W. 239; Stone v. Cambridge, 6 Cush. 270; Bowen v. Monroe, 106 Mich. 404; Jenney v. Des Moines, 103 Iowa, 350; Carlinville v. McClure, 156 Ill. 496; C. & N. P. R. Co. v. Chicago, 172 Ill. 69; Haughawout v. Raymond et al., 86 Pac. 53 (Cal.); City of Connersville v. Merrill, 42 N. E. 1112 (Ind.); Emmert v. City of Elyria, 78 N. E. 269 (Ohio.); State v. Birkhauser, 56 N. W. 303, (Neb.); Gilmore v. City of Utica et al., 29 N. E. 840; Clyde v. City of Moscow et al., (Ida.) 131 Pac. 381.

(3) Under point three of the opinion, Appellant cited: State v. Mayor of Bayonne, 24 Atl. Rep. 448; State v. Mayor of Hoboken, 35 N. J. Law, 205; Penwarden v. Dunellen, 50 N. J. Law, 565; Packard v. Gergen Neck Railway Company, 22 Atl. 227; Town of Trenton v. Coyle, 17 S. W. 643; City of Carlyle v. County of Clinton, 140 Ill. 512.

Respondents submitted that: The word, "ordinance" used in section 1337, was intended for "resolution," because it is by resolution that the city is required to order the improvement done, and section 1337 should read, "any city desiring to make the collection of any such special assessment as aforesaid by installments, the resolution providing for said improvement shall also state that the same shall be collected by installents."

WHITING, J. The city of Sioux Falls having, through its proper officers, entered into a contract for the paving of part of one of its streets, plaintiff, who owned property adjacent thereto,

brought this action against the city, its officers, and the paving company, with whom the city had contracted, asking that the contract be declared void, and that a permanent injunction issue; she also sought an injunction pendente lite, and it is from an order denying same that this appeal was taken.

Sioux Falls is a city under commission, and section 1303, P. C., as amended by chapter 95, Laws 1911, and chapter 126, Laws 1913, provides that, when the board of commissioners of a city under commission shall deem it necessary to pave any street, "it shall in a proposed resolution declare the necessity of such improvement and shall give therein a description of the proposed improvement, * * *" and shall fix a time and place when said resolution will be proposed for adoption. Such statute also provides that such resolution, together with a notice of time and place, when same shall be proposed for adoption, shall be published; that, at the time and place fixed, objections shall be considered to the proposed resolution, which resolution can either be rejected, adopted as proposed, or amended and adopted; that the board shall then wait 20 days, and unless the referendum is invoked, or unless a written protest shall have been filed, signed by the owners of more than 65 per cent. of the frontage of said property liable to assessment by the adoption of such resolution, such board shall have power to cause such improvement to be made and to contract therefor; and that all work done "shall be let by contract to the lowest responsible bidder therefor." The proposed resolution announced that the street should—"be paved with one of the following pavements, to-wit, granite block, creosoted wood block, asphaltic concrete, bitulithic, Portland cement, concrete or dolarway, and that the same be paved and the work done and performed in accordance with the plans and specifications for paving."

And that:

"Separate plans and specifications for each of the above described pavements are now on file in the office of the city engineer of the city of Sioux Falls, and have heretofore been adopted by the board of commissioners of the city of Sioux Falls, which plans and specifications may be inspected by any and all persons interested therein or affected thereby."

No question is raised but that such resolution, together with notice of the time and place for hearing same, was published as required by law.  No protest was filed and no amendments or modification of such resolution were proposed, and it was adopted.  After such adoption, no protest was filed, and, 20 days having expired, the board published notice for bids, and then entered into the contract with the defendant pavement company, which contract called for the paving of such street with °one of the materials named in the original proposed resolution.  Bids were submitted by several different parties, some of whom, among them being defendant paving company, bid upon more than one material.

No question is raised as to the sufficiency of the specifications that had been adopted for each kind of pavement, and there is no ground for contention but that the proposed resolution, referring, as it does, to such specifications (City of Connersville v. Merrill, 14 Ind. App. 303, 42 N. E. 1112; Chase v. Trout, 146 Cal. 350, 80 Pac. 81; Whittaker v. Deadwood, 23 S. D. 538, 122 N. W. 590, 139 Am. St. Rep. 1076), and all following proceedings, would have been valid, provided such resolution had named but one kind of paving material, and provided the notice for bids and the bids had been confined to a pavement to be constructed of the one kind of material; but appellant contends "that it is not a compliance with the statute to describe the improvement to be made in the alternative."

[1] The authority to assess abutting property for street improvement is purely statutory, and the statutes should be strictly construed to the end that the rights of the property owners be fully protected.  Mason v. City of Sioux Falls, 2 S. D. 640, 51 N. W. 774; Whittaker v. City of Deadwood, supra.  Keeping this thought in mind, let us determine by what means the Legislature sought to protect the rights of the property owners.  We think a consideration of the provisions of section 1303, P. C., reveals two all-important things sought to be insured by its enactment: first, that the property owners be given an opportunity to arrive at an intelligent determination as to the desirability of the improvement and an opportunity to make an effective protest if desired; second, that there be competition in

bidding so as to insure economy in the making of public improvement.

[2] What construction should we place upon that part of said section 1303 which provides that the proposed resolution "shall give therein a description of the proposed improvement," in order that such construction may tend to promote rather than destroy the two controlling purposes of such section. We shall not try to harmonize conflicting opinions construing statutes covering questions similar to the one before us, though undoubtedly in many cases the conflict is more apparent than real; but, as illustrative of a conflict that is real, we note the two cases of City of Bluffton v. Miller, 33 Ind. App. 521, 70 N. E. 989, and Martindale v. Rochester, 171 Ind. 250, 86 N. E. 321, both construing a statute which provides that the resolution of necessity shall state "the kind, size, location, and terminal points" of the proposed improvement. In both cases the resolution described the "kind" of pavement in the alternative. In the first case the court held the resolution bad, saying: "If the council may designate more than one kind of improvement, it may designate all kinds." In the second case the court held that the resolution "was a substantial compliance" with that part of the law above set out.

Appellant says:

"Under the provisions of the South Dakota statute, the property owners along the line of any proposed improvement have the right to protest out the improvement, and the object of the resolution is to apprise them of what the proposed improvement consists, so as to give them the opportunity to exercise their right of protest, if they desire to do so. The statute requires that the resolution shall contain 'a description of the proposed improvement,' and it is certainly no 'description' when the pavement proposed is in the alternative of six different kinds of pavement, varying greatly both in price, quality, and adaptability for traffic purposes. Under the statute, 65 per cent. of the property owners are required to protest out a proposed improvement. If a resolution were adopted calling for a single form of paving, the property owners would then have a single proposition submitted to them, and, if the requisite percentage did not favor that form of pavement, it could be protested out and a resolution

adopted for some other form of pavement which would not be objected to by 65 per cent. of the property owners. When, however, there are in one and the same resolution six different forms of pavement presented in the alternative, each property owner is deprived of his right to protest against any form of paving which he may not favor and it is left to the city commission to decide in favor of a pavement according to the whims of the commissioners, regardless of the fact that the pavement selected may be favored by only a small percentage of the property owners."

If it is true that the naming of several materials in the alternative in such resolution does prevent the property owners from entering an intelligent and effective protest, then there is merit in appellant's contention. We are, however, of the opinion that the naming of several materials in such resolution—provided there are on file ample specifications relating to each of such materials—tends to promote intelligent and effective action on the part of the property owners, tends to expedite final determination of the wishes of the property owners, and tends to produce the greatest possible competition among those bidding for the work.

It is a well-known fact that some paving materials are patented. It seems clear to us that if the resolution named only one material for pavement, and that a patented one, the possibility of competitive bidding would be entirely eliminated; in such case, if the patented material was one which could not be purchased in the open market, it is at least doubtful whether the resolution would be valid (Fineran v. Central Bitulithic Paving Co., 116 Ky. 505, 76 S. W. 415, 3 Ann. Cas. 741; State of New Jersey v. City of Elizabeth, 35 N. J. Law, 351; Fishburn v. Chicago, 171 Ill. 338, 49 N. E. 542, 39 L. R. A. 482, 63 Am. St. Rep. 236), though such resolution, even though it named one material only—provided such material could be procured or manufactured by any one or, if a patented article, could be purchased on the open market—would unquestionably be valid (Parker v. Philadelphia, 220 Pa. 208, 69 Atl. 670). While we are of the opinion that competition might ordinarily be obtained where but one material is proposed, provided such material be one free from monopolistic control, yet we are fully satisfied that competition, such as was in the minds of those who enacted

this statute, could always be more fully insured by such a procedure as would tend to present to bidders more than one material upon which to offer bids.   As was said by the court in City of Detroit v. Hosmer, 79 Mich. 384, 44 N. W. 622:

"The end desired was (is) a single one, and one which could (can) be reached by various means.   The cheapest and best means to reach that end must·be to open the door to competition between the means."

In Attorney General v. Detroit, 26 Mich. 263, Judge Christiancy said:

"When the pavement of a street is in contemplation, there are two kinds of competition which it is very desirable to create among those who may wish to undertake the work: first, that between the different kinds of pavement, or those prepared to engage in putting them down; and, second, that between parties prepared to put down the same kind.   It is the latter species of competition only which the charter requires the city officers to take measures to secure.   *   *   *   There is nothing, however, in the charter, which prevents the city from availing itself, also, of the benefit of·the other species of competition, that growing out of the different kinds of ·pavement seeking the public favor and adoption.   And as the relative cost and value of the respective kinds would form a legitimate element of consideration with the council, in determining which kind to adopt for any particular street, a just regard for the public interest would certainly warrant, if it does not require, some effort to secure this species of competition, as well as that for any particular kind."

We have this situation:   If we hold that the provision requiring the resolution to contain "a description of the proposed improvement" forbids the stating of two or more proposed materials in the alternative, then we must either follow those courts which hold invalid a resolution which names but one material, and that a kind not the subject of competitive bidding, or else we must, in favor of monopolistic material, hold that the provision that the work "shall be let by contract to the lowest responsible bidder" may be disregarded.   We think that construction of section 1303, supra, to be the more sound and supported by the better line of reasoning, which will, under no circumstances, either render inoperative an integral and important part

of such section or deprive a city and its property owners of an opportunity to construct public improvements of that which, though the subject of monopolistic control, may yet be the best material to be had and, when subjected to competition with other materials, may stand, for purposes of bidding for the contract, on equal footing with such other materials. And if a proposed resolution may contain a statement of materials in the alternative, when one or more of such materials are subject to monopolistic control, in order that there may be competition between different kinds of material when otherwise there might be no competition, then certainly it follows that, although of several materials none may be subject to monopolistic control, yet they may all be named in a proposed resolution to the end that those interested may if they so desire, get the benefit, not only of competition between parties prepared to put down the same kind of material, but also competition between different kinds of material. We agree fully with Justice Cooley in the following statement found in the Detroit Case, supra :

"If the purpose * * * is to secure competition in work or supplies for the public, something is necessarily left to the discretion of the council; and they must determine in each case what competition the nature of the case will admit of, and what is the best method to secure it."

No claim is made but what the property owner could, from the resolution and specifications on file and adopted, procure a full description of the improvement as it would be if made from any one of the materials proposed. Let us note what would be the practical workings of such a resolution. The property owner, who might favor the paving of the street, but who was opposed to the use of one or more of the pavements proposed, would not be driven to a general protest, but need only protest against the particular material or materials to which he was opposed. Thus the proposing of several materials in the alternative would tend to expedite the ascertainment by the commissioners of the exact wishes of such property holder. The property owner being permitted to protest against one or more materials while favoring the improvement itself, where a majority favored the improvement there would almost invariably be some one or more materials against which the owners of 65 per cent. of property

frontage would not care to protest, thus avoiding, in many cases, the protesting out of one or more resolutions before a satisfactory material should chance to be named in a proposed resolution; and there would be more genuine competition where there are left more than one material upon which bids may be offered. We are not confronted with the question presented in some cases, where, instead of stating two or more definite materials in the alternative, the resolution adds some indefinite description, such as "or other standard pavement," and we are not called upon to express any views upon the effect of the addition of such words.

We approve the following from the case of Mayor of City of Baltimore v. Gahan, 104 Md. 145, 64 Atl. 716:

"It may be further answered that the assumption that the * * * ordinance does not select the material to be used is not well founded, since the ordinance adopts three, and no other than one of the three can be employed, and the one which is chosen is in fact one which has been antecedently named by the city council. Of course, such a procedure is very far from being tantamount to the adoption of an ordinance which embodies a broad and unrestricted * * * power to select, according to its own judgment, any material it may choose for a pavement."

We also quote with approval the following from the case of Jacksonville Ry. Co. v. City of Jacksonville, 114 Ill. 562, 2 N. E. 478:

"Where, then, is the uncertainty in the ordinance complained of? Do counsel wish to be understood as holding that any ordinance which gives the municipality or contractor an election as to which of two or more kinds of material equally suitable for a proposed improvement may be used is necessarily void for that reason? * * * We have no hesitancy in holding that such a construction of the statute would be exceedingly narrow and wholly unwarranted by the words of the act. In many cases, we have no doubt, it would materially embarrass municipal authorities in making such improvements, by confining them to a particular kind of material, when other equally good material of the same general class might be had on as favorable or better terms, if an election were given."

In Mayor of City of Baltimore v. Flack, 104 Md. 107, 64 Atl. 702, it was well said :

"What difference is there, or can there be—looking solely to the extent of that authority—between selecting the kind of pavement before bids are asked for and selecting the kind of pavement after the bids have been received and opened, upon distinct sets of specifications descriptive of wholly different kinds of pavements, but all of which are suited to the same general purpose? Manifestly, none whatever, though in some particulars, not touching the power itself, but affecting the ultimate result in other ways, there may be a difference between the two methods. Thus by the selection of the materials, or the kind of pavement, after the bids have been received, combinations between bidders to inflate prices may be in a great measure avoided, since it is altogether improbable that parties who compete for the adoption of their respective materials will all ask exorbitant prices, as each party will, most likely, strive, by depressing prices, to secure the contract."

[3] The proposed resolution provided that the special assessment levied to pay the cost of the paving should be paid in five equal annual installments. Section 1303, P. C., is a part of article 16 of chapter 14, P. C. Sections 1333 and 1337, found in article 17 of the same chapter, are as follows:

"Sec. 1333. Whenever the city council of any city shall deem it necessary to grade, pave or macadamize any street, avenue or alley, and have taken all the steps prescribed in the preceding article in relation thereto, and so provided by an ordinance passed by two-thirds of all the aldermen elect, they may divide the amount of the special assessment therefor into installments, the first of which shall not exceed twenty per cent. of the total of said assessment, which shall be due and payable from and after the filing of the assessment roll with the city treasurer."

"Sec. 1337. Any city desiring to make the collection of any such special assessment as aforesaid by installments, the ordinance providing for said improvements shall also state that the same shall be collected by installments and fix the amount of the first installment."

Appellant contends that the resolution was invalid because

no special ordinance was adopted for the division into install-
ments of the paving assessment for this particular project; that
the only proceeding had by the commissioners was the resolution
for paving. Respondents contend that the division of the assess-
ment into installments is valid because, at the time this resolu-
tion was passed and published, there was an ordinance of said
city in effect providing that all assessments for paving streets
might be collected in five installments. The ordinance referred
to by respondents, and which it is conceded was passed prior to
the time the resolution was passed and published and had never
been repealed, was a general ordinance relating to special assess-
ments for paving streets, but having no special reference to this
particular paving project. It provided that, whenever the city
officials should proceed, by special assessment, to pave any street
or part thereof, they might divide the special assessment into
five installments; the first, not exceeding 20 per cent. of the
total, to be due and payable upon filing the assessment roll with
city treasurer, the other four to be paid annually and collected in
the same manner that other special assessments were collected.
Such ordinance provided that, whenever the said officials desired
to pave a street and to divide the special assessment therefor into
installments, the resolution of necessity "shall also state that
the special assessment therefor shall be collected by installment
and fix the amount of the first installment." An examination of
this whole law reveals the fact that article 16 thereof contains
complete and adequate provisions granting authority to the city
officers to make improvements and to levy assessments therefor
and detailing all the necessary steps to be taken and conditions
to be complied with. Under such article, a street may be paved
and the cost thereof assessed against the adjacent property with-
out the necessity of an ordinance at any stage of the proceeding.
It is only when it is desired to divide the assessment that an
ordinance becomes necessary. Article 17 relates solely to the
division of assessment.

[4] Inasmuch as there is, under article 16, no ordinance
providing for the improvements mentioned in section 1333, we
think it clear that the word "ordinance," as used in section
1337, refers to the "resolution" provided for by section 1303 of
article 16, otherwise section 1337 would be meaningless. While

section 1333 is far from clear in its wording, we think that it should be construed as providing two conditions precedent to the actual division of the assessment: first, that the city officers must have proceeded in accordance with article 16 in every step essential to the passing of the proposed resolution, and in the giving notice thereof, the consideration of protests, the adoption of the resolution, the advertising for bids, the accepting of bids and entering into contract, the considering of the engineer's estimate, the making up of the assessment roll, etc.; second, that there must be in existence an ordinance, which has been properly passed, authorizing the division of assessments into installments. Moreover, inasmuch as section 1337 provides that the ordinance (resolution) mentioned in section 1303 shall state that the assessment shall be collected by installments, it follows that article 17 contemplates that the "ordinance" mentioned in section 1333 be passed prior to, or at least at the time of, the said resolution.

[5] Thus the only question left for our consideration is whether a city council or board of commissioners must pass a separate ordinance for each contemplated project, or whether it may pass a general ordinance granting power, in case of any future project, to make an assessment by installments. No authorities have been cited by appellant which support her contention that there must be a separate ordinance preceding or accompanying the resolution proposing each project, and we see nothing in the wording of section 1333 which requires it, and it seems improbable that the Legislature intended that every time a city council contemplated the paving of a street or part thereof, and before it knew whether such project would meet with favor and be carried out, it should go to the trouble, expense, and delay of passing an ordinance relating to an assessment that might never be made. If such is the law, we might expect to find, within the ordinance books of our larger cities, many ordinances, the passing of which was a useless waste of time and money. It is certainly more reasonable to say that the Legislature intended a city to have the power, if it so desired, to pass an ordinance declaring the settled policy of the city, and then follow same, in each particular case, by the proper

statement in the proposed resolution, as was done by the city of Sioux Falls.

The order appealed from is affirmed.