**PETROLEUM EXPLORATION et al. v. JOSEPH GREENSPON'S SONS IRON & STEEL CO.**

No. 5927.

Circuit Court of Appeals, Sixth Circuit.

Oct. 9, 1931.

E. C. O'Rear, of Frankfort, Ky. (Allen Prewitt, of Frankfort, Ky., on the brief); for appellants.

S. R. Ogden, of Louisville, Ky. (Robert G. Gordon, of Louisville, Ky., A. T. W. Manning, of Lexington, Ky., and Gordon, Laurent & Ogden, of Louisville, Ky., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This is an appeal from an order granting an interlocutory injunction, enjoining appellants from proceeding under a franchise granted by the city of Corbin to Petroleum Exploration August 8, 1930, and by that company assigned to its subsidiary, the People's Gas Company, September 17, 1930. The decision of this court in City of Corbin, Ky. v. Joseph Greenspon's Sons Iron & Steel Co., 52 F.(2d) 939, disposes of all substantial questions presented on the record, except the validity of the franchise.

Section 164 of the state Constitution declares that, before granting such a franchise, the municipality "shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder." It has been held that the intent of this provision is "to afford every person who desired to bid at the sale of the franchise, in good faith, full opportunity so to do." Stites v. Norton, 125 Ky. 672, 101 S. W. 1189, 1191, 13 L. R. A. (N. S.) 474. The ordinance di-

recting the sale of the franchise in question provided that no firm or corporation should have the right to bid for the franchise except upon condition that it file with the mayor, at least one hour before the time designated for the sale, evidence (1) that "it is the owner of not less than two distinct and independent fields and sources of supply of natural gas on which there are producing gas wells from which it can supply the City of Corbin," and (2) that it "is the owner of not less than the aggregate of nine (9) producing gas wells, in said two fields and sources of supply of natural gas, having a total daily open-flow of not less than twelve million cubic feet of gas." Alternative conditions were that the bidder have a valid enforceable and closed contract with some one having the requisite number of fields and producing wells with a like total daily open flow. The court below decided that the requirements that the bidder be in position to furnish an adequate supply of gas, and that it have two independent fields and sources of supply were reasonable, but was of opinion that the further requirement that it be the owner of or have available "not less than the aggregate of nine (9) producing gas wells, having a total daily open-flow of not less than twelve million cubic feet," was unreasonable, and had the effect of excluding competitive bidding within the meaning of the constitutional provision.

The leading case in Kentucky construing the constitutional provision is Gathright v. Byllesby & Co., 154 Ky. 106, 157 S. W. 45. In that case there was a sale of a franchise which required the grantee, within sixty days after the acceptance of the ordinance, to begin to lay a pipe line from the most available source of supply of natural gas in West Virginia to Louisville, and to complete it within a year. The Byllesby Company already had a plant and mains in the city of Louisville. It also had options to purchase or lease certain gas lands in West Virginia from which gas available for Louisville could be had. It was contended that the ordinance was so drawn that Byllesby must of necessity be the only bidder. In sustaining the ordinance, the court approved but distinguished Fineran v. Central Bitulithic Paving Co., 116 Ky. 495, 76 S. W. 415, 3 Ann. Cas. 741, where an ordinance for the letting of a contract to construct a street of "bituminous macadam," a patented composition in the exclusive control of one person, was held invalid. The Fineran Case followed Fishburn v. Chicago, 171 Ill. 338, 49 N. E. 532, 533, 39 L. R. A.

482, 63 Am. St. Rep. 236, where the city advertised for asphalt from "Pitch Lake" in the exclusive control of one concern. In that case the court held that the letting was not competitive, but went on to say that, if it be the judgment of the city that the most suitable and best material to be used in any contemplated improvement "is the product of some particular mine or quarry, or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance, or compound the standard of quality and fitness, and to require that material equal in all respects to it should be employed." The Fishburn Case was also approved in Gathright v. Byllesby.

It will be seen from the foregong Kentucky cases that the state Constitution does not forbid an advantage derived from standards of service, but only the advantage which by its "terms excludes other bidders." Thus an advantage which a bidder may have under the terms of the sale, because of the location of its properties such as available facilities for furnishing the service, is not forbidden by the Constitution. One bidder might have ample capital to operate the franchise where another has not, but, as suggested in the Byllesby Case, that would not give the one having capital and who could bid "an exclusive or an undue advantage." The test is, not whether it is "commercially feasible" for those who wish to bid to operate the franchise, but whether the conditions of sale constitute a standard for service which the city may reasonably establish. In the present case an adequate supply of gas was of the first importance to the city, and it would seem unnecessary to add that the practical way to secure this was to restrict the bidding to those who owned or had under contract the requisite resources. We cannot say on the record before us that the requirement that bidders have nine producing wells was not a reasonable requirement to insure the service desired. It appears in the proofs that there were several gas companies in Kentucky which had two distinct gas fields having the designated number of flowing wells with the requisite production in quantity. They might not have found it profitable to operate this franchise, and hence not "commercially feasible" to bid upon it, but that character of exclusion is not forbidden. It is only where the condition is so unreasonable as to exclude competition by its terms that the provision applies. The conditions here imposed do not fall within that class.

The Petroleum Exploration was in position to meet all the terms of the ordinance. Whether the People's Company, to which the franchise was assigned, was in like position at that time is unimportant. It is stated in the brief for appellee that the People's Company is a subsidiary of Petroleum Exploration. The latter company is apparently operating through the former. Whether so or not, the Petroleum Company possessed all the qualifications of a bidder at the time the franchise was bought, and the later assignment of the franchise to the People's Company was approved by the city. Appellee says that the city approved the assignment without investigation, which indicates that the requirements of the ordinance were not made for the purpose of insuring an adequate supply of gas. The reasons for the approval of the assignment do not fully appear in the record, and, considering the size of the city of Corbin, it is not too much to assume that the board of commissioners knew that it was the purpose of Petroleum Exploration to operate through the People's Company, or that the latter company owned or had under lease sufficient wells and gas lands to carry out the terms and conditions of the ordinance.

The decree is reversed, and the cause remanded for further proceedings.