(No. 33919.—▬▬▬▬▬

L. D. BEAN, Appellant, *vs.* McDONOUGH COUNTY HOSPITAL DISTRICT *et al.,* Appellees.

*Opinion filed April 23, 1956.*

Hunter & Walden, of Quincy, for appellant.

James C. Gumbart, of Macomb, for appellees.

Mr. Justice Klingbiel delivered the opinion of the court:

L. D. Bean, for himself and other owners of taxable property in McDonough County Hospital District, filed suit in the circuit court of that county seeking to restrain the district and its officers from issuing certain bonds. A motion by defendants to dismiss was granted, and plaintiff elected to stand on the complaint, appealing to this court from the decree dismissing the suit.

The hospital district is a municipal corporation having boundaries coterminous with those of the county. Its board of directors, without holding a special election, authorized the issuance of general obligation bonds in the amount of $1,680,000. The complaint then alleges that $1\frac{1}{2}$ per cent of the value of the taxable property in the district amounts to $1,689,778.77; that the county owns and operates a tuberculosis sanitarium; that under applicable statutes the district is obligated to take over the sanitarium and reimburse the county for its expenditures in acquiring the facilities; and that if the hospital district issues the aforesaid bonds, the amount thereof together with the undetermined · sum payable to the county for the sanitarium facilities will be greatly in excess of $1\frac{1}{2}$ per cent of the value of the taxable property in the district, contrary to law.

Section 21 of the Hospital District Law (Ill. Rev. Stat. 1955, chap. 23, par. 163.50,) declares that a district may finance part or all of the cost of hospital facilities by issu-

ing bonds. The permissible amount of such bonds is limited to 1½ per cent of the value of taxable property in the district unless the issuance of bonds is approved at a special election, in which case the limit is 5 per cent.

Section 23 of the Hospital District Law (Ill. Rev. Stat. 1955, chap. 23, par. 163.52,) provides that in case a district is coterminous with "any pre-existing public agency authorized to own, operate and maintain a public hospital," then such public agency shall cease to exercise any power in respect to hospitals within the district "from and after the date that it receives written notice from the Director of Public Health." Such notice is to be given only after the Director has ascertained that the district has placed its hospital facilities in operation. Provisions then follow relating to reimbursement by the district, within designated periods of time, for the expenditures made by a "pre-existing public agency" in acquiring "hospital facilities" which it may then be operating within the corporate limits of the hospital district.

To reverse the decree plaintiffs contend that the county tuberculosis sanitarium is a public hospital within the meaning of the act, that its ownership and operation by the county gives rise to a present debt of the hospital district, and that the amount of such debt, together with the proposed bonded indebtedness, exceeds the lawful limit of 1½ per cent of the value of taxable property in the district. The position is untenable for the reason, *inter alia,* that there is no present indebtedness of the district. That section 23 does not *ipso facto* create a debt is evident not only from the requirement that notice to the "pre-existing public agency" must first be given by the Director of Public Health but from the obvious fact that the amount of any possible future indebtedness is not yet ascertained. It is well established that prior to the extension of credit to a municipality for the cost of public improvements or facilities, and in the absence of a showing that the municipality

is not ready to raise the amount by taxation, no debt is created therefor. (See *People ex rel. Toman* v. *Crane,* 372 Ill. 228, 232-233; *Jacksonville Railway Co.* v. *City of Jacksonville,* 114 Ill. 562, 567-568.) The fact that under the statute the hospital district may in the future become obligated to take over and pay for the sanitarium, in the event statutory steps are taken, does not show a presently existing indebtedness. More is required than mere possibilities or expressions of intention. (See *People* v. *City of Chicago,* 349 Ill. 304, 337.) Even a formal resolution or election authorizing the issuance of bonds establishes no indebtedness of itself. The indebtedness is created only when the instruments are in fact issued and delivered. (*Austin* v. *Healy,* 376 Ill. 633.) *A fortiori,* the obligation contemplated by section 23 cannot exist until the statutory steps have been taken and the amount to be paid has been determined.

The contention of plaintiffs is further refuted by the language of section 21, which places a limit only on the amount of "bonds" that may be issued. Manifestly there are forms of indebtedness other than bonds, and section 23 makes no reference to bonds. There is no reason to believe that this difference in terminology was intended to be without significance. Moreover, limitations on indebtedness may contemplate that the liability to pay be voluntarily incurred, (see *City of Springfield* v. *Edwards,* 84 Ill. 626, 632,) thus presenting the question, which we find unnecessary to the present decision, whether the payment contemplated by section 23, if postponed, would in any event be included for limitation purposes. Other questions are presented a discussion of which is likewise unnecessary.

The proposed bond issue is within the limitation prescribed by statute, and the circuit court was therefore correct in dismissing the suit. The decree is affirmed.

*Decree affirmed.*